# BUTCH LEVY PLUMBING AND HEATING, INC. v. JOHN O. SALLBLAD.

126 N. W. (2d) 380.

February 7, 1964—No. 39,128.

*Donald E. Wiese* and *Howard S. Cox,* for appellant.
*Harold Siegel,* for respondent.

NELSON, JUSTICE.

Defendant appeals from an order of the Hennepin County District Court denying his motion for a new trial, following a determination

that he owed plaintiff, Butch Levy Plumbing and Heating, Inc., $5,285.50 for labor and material furnished him under a contract between the parties.

Sometime during the first half of 1960 defendant undertook the erection of an apartment building at 1800 Fremont Avenue North in Minneapolis. Specifications and drawings of mechanical installations for the building were prepared by Ralph D. Thomas & Associates, Inc., and the defendant requested bids on the basis of these plans. Plaintiff was not among those submitting bids but later independently submitted a proposal to furnish and install a plumbing, heating, and ventilating system. The testimony of Sheldon Rein, who represented the plaintiff as an estimator in submitting its proposal, indicates that although he had seen the specifications of the Thomas firm, the proposal as accepted by defendant was not necessarily based upon those plans.

What has been termed a "contract agreement" between the parties herein was entered into June 10, 1960, although it was not actually reduced to writing and signed until January 1961. This written agreement incorporates "change orders" dated June 21 and July 20, 1960, by which the contract price, originally $27,660, was increased to $29,100 to cover changes found necessary after plaintiff's original proposal had been accepted.

Plaintiff commenced work about July 13, 1960, and with the exception of some minor corrections, alterations, and additions, the work was substantially performed by January 1961 and fully completed by March 1, 1961. Disputes arose from time to time while the work was in progress. Without going into detail, suffice it to say that complaints were lodged by defendant, some of which plaintiff agreed to, and did, satisfy. Others, it did not.

Plaintiff began billing the defendant no later than August 1960 for the work done and materials furnished during July and August 1960. It was not until December 16, after plaintiff's outlay for labor alone had exceeded $8,000, that defendant paid $12,000. The check by which this payment was made contained on its face the following printed statement:

· "BY ENDORSEMENT THIS CHECK WHEN PAID IS ACCEPTED IN FULL PAYMENT OF THE FOLLOWING ACCOUNT."

Below this statement is typewritten the following:

"Apply on 1800 1806 Fremont Ave. No."

On the reverse side of the check the following printed statement appears:

"THIS CHECK WHEN ENDORSED IS CONSIDERED A LIEN WAIVER SATISFACTORY IN FULL FOR ANY OR ALL LABOR AND MATERIALS."

Plaintiff continued pressing requests for additional payments, but defendant continued to refuse payment for one reason or another. On one occasion defendant promised to pay if plaintiff would provide a one-year service warranty on materials and installation. On December 29, 1960, plaintiff furnished a warranty effective from February 1, 1961, to January 31, 1962. Defendant, nevertheless, continued to withhold payments.

In January 1961 plaintiff's president, Leonard B. Levy, negotiated with defendant in an attempt to secure further payment. Defendant then promised to continue making payments if plaintiff would sign the written contract, which Mr. Levy did. The written contract required that the materials and labor furnished by plaintiff be as specified in the plan prepared for defendant by the Thomas firm but stated that this condition was modified by the proposal submitted by plaintiff and accepted by defendant on June 10, 1960. On January 13, 1961, defendant issued another check for $10,000 to plaintiff. This check also contained on its face the printed statement:

"BY ENDORSEMENT THIS CHECK WHEN PAID IS ACCEPTED IN FULL PAYMENT OF THE FOLLOWING ACCOUNT."

Below this statement was typewritten the following:

"1800 Fremont Ave. No. In full for all plumbing Heating and Ventilating. to-date."

On the reverse side of this check also, the following printed statement appeared:

"This Check When Endorsed Is Considered A Lien Waiver Satisfactory In Full For Any Or All Labor And Materials."

This statement has been stricken with a pen. There is no testimony in the record indicating who may have stricken the statement.

At defendant's request plaintiff's president, upon receipt of the check of January 13, signed an instrument which recited in part:

"Receipt of the above amount is hereby acknowledged in Plumbing and Heating payment of all Labor and Materials including all Ventilating * * * by the undersigned delivered or furnished to 1800 Fremont Ave. No. Minneapolis, Minn., and, for value received, hereby waives all rights which may have been acquired by the undersigned to file mechanics' liens against said premises for labor, skill or material furnished to said premises. Balance Due $ None."

Following Mr. Levy's signature was a paragraph which reads:

"Notice: Receipt of lien waiver required for material furnished."

The record shows that defendant brought into court a document entitled "Damages To Defendant," listing 19 items encompassing his complaints, and testified with regard to each item. Mr. Levy testified in opposition to defendant's claims, as did Elmer Earl Hagberg, whose occupation is putting in sewer and water installations, and Sheldon Rein, the construction supervisor. Their testimony indicated that such installations had been properly made, contrary to defendant's claim, and conformed to city requirements. The testimony concerning these items presented fact questions for the court to determine as the trier of facts, a function which necessarily included passing upon the credibility of the testimony. The only other evidence offered by defendant to support these items of damages was his testimony that the apartment building would have been worth an additional $12,000 to $14,000 if plaintiff's work "had been properly done." We must, however, take note of the fact that such testimony by the owner, while permitted, can only be given such weight as all the circumstances warrant when it is not supported by other expert testimony on that issue.

While the defendant contends that the recitals on the check and lien waiver of January 13, 1961, support his claim that these constitute

the basis for an accord and satisfaction between the parties, it is clear from the record that both plaintiff's president and other employees, including the office secretary, continued to demand payment of the balance on the contract, now reduced to $7,100. Defendant offered no proof of any discussions between the parties indicating that they intended to compromise or that they mutually agreed to reduce the contract price.

It appears that about February 10 plaintiff's president and defendant discussed payment of the balance due on the contract. Defendant promised at that time to pay the remaining sum on the contract price, less an agreed credit of $848 which it cost defendant to replace an unsatisfactory incinerator installed by plaintiff.

Mr. Levy testified that when he returned from out of state in January 1961 and found that plaintiff's employees and defendant had been unable to reach an agreement as to payment of the balance due he immediately contacted the defendant, asking him for further payments because the work was then largely completed. He states that defendant said that if Levy would sign the written agreement, which had been changed from time to time, he would pay some money on the job. Under cross-examination Levy testified that:

"A.   * * * I saw no problem in this agreement signing, because as it states in Article 1, 'This condition modified as per attached agreements as signed by Mr. Sallblad as Owner and the Contractor Leonard B. Levy.' The modifications were spelled out in our agreement of June 10, 1960.

"Q.   Mr. Levy, it wasn't your comment on your document I was wondering about. You did sign it, it does call for plans and specifications?

"A.   With modifications."

Again, on further redirect the witness testified:

"Q.   Mr. Levy, just two questions. At the time you signed this agreement, you were in very bad financial straits, is that correct?

"A.   I would say I was in very bad financial straits.

"Q.   You signed this agreement under duress in order to obtain the money?      ..

"A. To obtain the money and not be stalled off any further.

"Q. That was the only purpose?

"A. The only purpose was to get the check."

George Payne, plaintiff's general manager, testified as follows:

"Q. On or about February, 1961, did you ever have any conversation with Mr. Sallblad?

"A. Yes.

"Q. What was that conversation, if any?

"A. This conversation pertained to mechanic's material lien waivers that pertained to his particular job.

"Q. What was that conversation?

"A. At that time Mr. Sallblad—this would be about, I'd say somewhere in the neighborhood of 10 or 11 of February—he informed me that if we would bring proper lien waivers over to his office from our suppliers, which would be our subcontractors, the various wholesalers in town, that upon receipt of all the lien waivers he would at that time pay our account up in full. Now the purpose of this, of course, was the fact that no other suppliers could come and attach the building later. We secured the lien waivers, paid up the people we had owed that we bought the merchandise from, and gave Mr. Sallblad the lien waivers. At that point he did not reimburse us for the balance due."

Plaintiff's Exhibit G was then marked and the witness identified it as follows:

"A. It's a lien waiver from Stuart Burniece, who was a supplier for this project, and it's dated February 10, 1961.

"Q. Was this obtained pursuant to your conversation with Mr. Sallblad?

"A. Yes, it was."

The lien waiver, executed on a commonly used legal form, was then received in evidence. It recited full payment for the supplies furnished plaintiff and waived all rights to file mechanics liens against defendant's premises.

The record does not disclose the filing of liens by any subcontractors performing labor or furnishing material to plaintiff. Plaintiff itself filed

a mechanics lien against defendant's property March 17, 1961. Prior to trial, however, the parties stipulated that the action would be based only on contract.

Pursuant to the parties' stipulation that defendant be allowed a credit of $848 for the incinerator he had replaced, plaintiff amended its complaint to claim $6,252 as the unpaid balance on the contract. After trial to the court without a jury, the court applied a setoff in defendant's favor of $225, as damages occasioned by plaintiff's negligent performance of work in one apartment, and found that defendant owed plaintiff a balance of $5,285.50 with interest from March 17, 1961.

The court thereafter denied defendant's motion for the following relief:

"That certain judgment entered on the 29th day of March, 1963, in the above captioned matter be vacated on the ground that the verdict was not justified by the evidence and is contrary to law; in the alternative that the defendant be granted a new trial on the grounds set forth supra.

"Such other and further relief as the Court may deem just and proper."

The motion does not support defendant's assignment of errors as set forth on appeal.

Defendant fails to point out in his assignments of error any specific error of law occurring at the trial and fails to set forth the specific findings challenged by specific assignments of error as required by the rules of this court. See, 1 Dunnell, Dig. (3 ed.) § 361; Taylor v. Chicago G. W. R. Co. 165 Minn. 266, 206 N. W. 404; Raymond v. McKenzie, 220 Minn. 234, 19 N. W. (2d) 423; Lehman v. Hansord Pontiac Co. Inc. 246 Minn. 1, 74 N. W. (2d) 305. However, we have concluded to dispose of this appeal on its merits even though the assignments of error are faulty. Plaintiff in its brief has voluntarily considered matters argued by defendant herein, and since this is a civil case, this court if it chooses to do so may consider the appeal upon the merits as was done in Lehman v. Hansord Pontiac Co. Inc. *supra,* and cases cited therein.

The sole issue presented by this appeal is whether defendant's

check dated January 13, 1961, for $10,000, and plaintiff's lien waiver bearing the same date, establish an accord and satisfaction, as defendant contends. The defendant alleged that certain setoffs were taken into consideration when a settlement was made, but made no particular effort to prove the setoffs at the trial. It was admitted by defendant's counsel on oral argument that the object of the setoff allegation and the proof as offered was to establish the existence of an unliquidated contract as a basis for claiming an accord and satisfaction. As the record stands, we limit our consideration to whether defendant has established the existence of such accord and satisfaction. In so doing we are limited to a determination of whether the findings of fact are sustained by the evidence and whether the conclusions of law and order for judgment find sufficient support in the findings.

It has long been the rule of this court that an enforceable accord and satisfaction arises when a creditor accepts part payment of an unliquidated debt which the debtor tenders in full satisfaction of the debt. Marion v. Heimbach, 62 Minn. 214, 64 N. W. 386; 1 Dunnell, Dig. (3 ed.) § 40. In Winter Wolff & Co. v. Co-op Lead & Chemical Co. 261 Minn. 199, 209, 111 N. W. (2d) 461, 467, following Rye v. Phillips, 203 Minn. 567, 282 N. W. 459, 119 A. L. R. 1120, we said that a similar rule was applicable when the debt is liquidated and not in dispute:

"* * * Where two parties in the position of debtor and creditor, having full knowledge of the facts and dealing fairly with each other, settle an account, even though it may be called a liquidated one, by the offer of one party to pay a definite amount and the acceptance of that offer by the other party, there is no logical or legal reason why they should not be permitted to do so."

When payment is in the form of a check *which is offered in full satisfaction of the debt,* retention and negotiation by the creditor, *with knowledge of all the facts,* constitute an acceptance of the offer to settle the indebtedness whether the debt is liquidated, Winter Wolff & Co. v. Co-op Lead & Chemical Co. *supra,* or unliquidated. See, Marion v. Heimbach, *supra;* 6 Williston, Contracts (Rev. ed.) § 1854.

The question in the instant case is whether the parties in effect en-

tered into a compromise or *mutually agreed* that the $10,000 check of January 13, 1961, was to be in full payment of the contract price. In no case in which mutual agreement was lacking has the court held that an accord and satisfaction had been reached. Payment must be offered in full satisfaction of the debt, Hillestad v. Lee, 91 Minn. 335, 97 N. W. 1055; Leighton v. Bancamerica-Blair Corp. 192 Minn. 223, 255 N. W. 848; and such payment must be accepted as an accord and satisfaction. Marion v. Heimbach, *supra;* Cut Price Super Markets v. Kingpin Foods, Inc. 256 Minn. 339, 98 N. W. (2d) 257. As was said in the Marion case (62 Minn. 215, 64 N. W. 386) and followed in the Cut Price case:

"* * * [I]t is the *mutual agreement* of the parties to the terms of the compromise * * * which furnishes the consideration." (Italics supplied.)

Defendant argues that the lien waiver signed by plaintiff January 13, 1961, was also an acknowledgment by plaintiff that it had been paid in full for its installation on defendant's property. However, the document signed by plaintiff is nothing more than a simple lien waiver. The words "Balance Due $ None" do not affect the balance owing under the contract. The word "None" in that phrase is limited to the words "Balance Due" and relates to the waiver required for materials furnished. The phrase cannot fairly be construed to mean "Balance Due $ None on contract" as the instrument was clearly intended to be only a lien waiver. Nor did the statement which was stricken out on the back of the check dated January 13, 1961, affect the balance due under the contract.

Nothing in the record, aside from the words "In full for all plumbing Heating and Ventilating. to-date," appearing on the face of the check, supports the claim that the check was tendered and accepted as an accord and satisfaction. The record as a whole fails to support the existence of the claimed agreement to compromise. The meaning defendant would give these words is not the only, nor the most reasonable, construction to which they are susceptible. They only qualify the printed declaration on defendant's checks to the effect that "BY ENDORSEMENT THIS CHECK WHEN PAID IS ACCEPTED IN FULL

PAYMENT OF THE FOLLOWING ACCOUNT," and the evidence relating to later communications between plaintiff and defendant clearly establishes that these words were placed on the check without plaintiff's concurrence.

The court, as the factfinder, might well have determined that the words "to-date" did no more than suggest that further work was to be forthcoming under the contract for which further payments would be made. In view of defendant's use of the words "to-date" as affixed to said check and the running dispute which the defendant claims had continued from the start between the parties regarding compliance with the specifications of the Thomas plan, it would not appear unreasonable to conclude, as the court might well have done, that defendant when tendering the check of January 13 hoped to induce plaintiff to make substantial alterations or, in the alternative, to negotiate a new contract price in accordance with claimed variances by plaintiff in its performance.

■ At best, the statement on the face of the check, as well as the lien waiver, is ambiguous. In Cut Price Super Markets v. Kingpin Foods, Inc. 256 Minn. 339, 354, 98 N. W. (2d) 257, 267, we said:

"* * * If the writing is ambiguous, resort may be had to extrinsic evidence * * *."

See, 4 Dunnell, Dig. (3 ed.) § 1817a.

The record in the instant case is entirely barren of any indication that there was any mutual agreement between the parties that the check and lien waiver were either an accord and satisfaction or evidence of one. The facts in the present case are much like those in Imperial Elev. Co. v. Hartford Acc. & Ind. Co. 163 Minn. 481, 204 N. W. 531, 42 A. L. R. 559, where the creditor accepted a check from the debtor which stated on its face: "In full per our remittance advice 11-15-21." This court refused to hold that there had been an accord and satisfaction, saying that the insuperable obstacle blocking such a holding was the fact that the debtor, long after his remittance, acknowledged his indebtedness in correspondence with the creditor. Not until suit was brought did the debtor take the position that the

debt was settled. The same reasoning applies to the attitude of defendant here.

The negotiations between the parties in the instant case, viewed from beginning to end, clearly establish that there was no mutual agreement to strike an accord and satisfaction. The actions of the parties refute such a conclusion.

In Miller v. Snedeker, 257 Minn. 204, 209, 101 N. W. (2d) 213, 219, this court said:

"* * * Ordinarily it is not our province to go into any extended discussion of the evidence to prove or demonstrate the absolute correctness of the findings of the trial court. The policy of this court has been set forth in the following language:

" '* * * It is the duty of such appellate court, of course, fully and fairly to consider such evidence, but so far only as is necessary to determine beyond question that it reasonably tends to support the findings; not that the trial court would not have been justified in making findings thereon in appellant's favor, but that the findings made are supported by evidence reasonably tending to establish the facts found.' [Citations omitted.]"

It was for the trial court to resolve the conflicts in the testimony. This court will consider the testimony in the light most favorable to the prevailing party and if the evidence as a whole tends to support the findings they will not be disturbed. It is not within the province of this court to make or amend findings of fact. 1 Dunnell, Dig. (3 ed.) § 434. Nor can we assume facts to be proved except in those rare cases where they are conclusively established. Breen v. Cameron, 132 Minn. 357, 157 N. W. 500.

The findings of the trial court, as the trier of facts, are entitled to the same weight as the verdict of a jury. They will not be reversed on appeal unless they are manifestly and palpably contrary to the evidence, and such rule applies whether an appeal is from a judgment or an order granting or denying a new trial. See, Donovan v. Dixon, 261 Minn. 455, 113 N. W. (2d) 432; Boulevard Plaza Corp. v. Campbell, 254 Minn. 123, 94 N. W. (2d) 273; Holt v. Swenson, 252 Minn. 510, 90 N. W. (2d) 724; Nielsen v. City of St. Paul, 252 Minn.

12, 88 N. W. (2d) 853; Ketterer v. Independent School Dist. No. 1, 248 Minn. 212, 79 N. W. (2d) 428; Olson v. Mullen, 244 Minn. 31, 68 N. W. (2d) 640; Loth v. Loth, 227 Minn. 387, 35 N. W. (2d) 542, 6 A. L. R. (2d) 176.

The record failing to establish an accord and satisfaction, the judgment must be affirmed.

Affirmed.