**ACTON CONSTRUCTION COMPANY, INC., Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. C6–84–1596.**

Court of Appeals of Minnesota.

Feb. 19, 1985.

David B. Sand, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., R. Clark DeVeau, Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by POPOVICH, C.J., and RANDALL and CRIPPEN, JJ., with oral argument waived.

## OPINION

RANDALL, Judge.

Acton Construction Company appeals from a judgment that accord and satisfaction bars recovery of its claim for additional compensation incurred on the construction of a bridge and related highway work. Acton contends that the evidence does not support the trial court's determination that an accord and satisfaction resulted when it signed a Department of Transportation certificate of final acceptance and negotiated a check in the amount set forth in the certificate. The State contends that the evidence supports the trial court's finding of an accord and satisfaction. If this court concludes that Acton's claim is not barred by accord and satisfaction, the State in the alternative claims: (1) Acton assumed the risk of the unexpected cost, (2) most of the claims made are for work expressly required in the contract, and (3) damages should be reduced. We reverse and remand.

## FACTS

In April of 1978 Acton and the State entered into a contract. Acton agreed to construct a bridge and complete the related highway work within 120 working days. The State agreed to pay Acton $1,367,-734.80. Liquidated damages were set at $2,000 a day if the work was not substantially completed within the time limit.

Acton began work on April 19, 1978. The State began charging working days on April 28. There was a cement shortage during the summer of 1978. In both August and September Acton wrote to the State informing it of potential delay because of the shortage and said that when it knew the duration of the delay it would request an equitable extension of time on the contract. On October 10, the day before it was scheduled to pour the bridge deck, Acton's concrete supplier notified it that concrete was not available. It received the necessary concrete on October 19 but paid a premium. Acton informed the State about the premium and delay and said it would be filing claims. In a later letter, Acton protested the State's assessment of working days which did not take into account the delay due to the shortage, and asked the State to consider alternative methods of construction or to compensate it for the extra costs of cold weather protection of the concrete. The State did not respond to the latter request. Acton found it necessary to pay a premium for the additional concrete it needed. Delays required it to incur additional expenses for protecting the concrete from cold.

The State allowed the bridge to be partially opened on December 6. In May of 1979 the State officially waived liquidated damages.

After the project was complete in July of 1979 Acton submitted a claim for additional expenses. In October the State concluded that the work performed was within the scope of the agreement and denied the claim. In January of 1980 Acton requested the State to release the remaining contract monies on the project. The State replied

by sending a final voucher which set forth in detail the payments that the State believed due under the contract. A cover letter advised Acton that the certificate of final acceptance should be signed and that any claims for additional compensation would not be considered unless a detailed statement was submitted so that a settlement or denial of the additional claims could be made within 90 days.

The executive vice-president, the secretary, and the general manager of Acton signed a certificate of final acceptance which contained the following:

> The undersigned contractor does hereby certify that he has performed and completed all the work described herein in accordance with, and pursuant to, the terms of his contract, and does hereby accept this final voucher as being correct, full and complete and does make claim in the amount of $33,666.01 for final payment on this contract in accordance with this final voucher.

Acton returned the duly executed certificate to the State. It attached a letter signed by the general manager with a "Notice of Reservation of Rights" which read:

> "Please take notice that this Final Contract Voucher No. 13 on S.P. 2758–34, Glory Hole By Pass and Construct Bridge 27062, Contract No. 16991, is being signed with full reservation by Acton Construction Company, Inc., as Contractor, of its rights to assert claims and defenses for changes, changed conditions, quantity adjustments, extra work, delays, disruptions and damages for breach of contract including, but not limited to, those set forth in Acton's letter of claim dated August 28, 1979 and documents submitted therewith."

The State issued a check to Acton for $33,666.01. Acton negotiated it.

Acton then brought this action seeking recovery of $26,694.68 in additional compensation. The action was tried to the court, which concluded that an accord and satisfaction resulted when Acton executed the certificate and thereafter negotiated the check for $33,666.01. The court fur-

ther concluded that the "Notice of Reservation of Rights" was of no effect and ordered that judgment be entered in favor of the State.

## ISSUES

1. Did the trial court err in concluding that accord and satisfaction resulted when Acton executed the certificate and negotiated the check of $33,666.01?

2. Is the State barred from challenging the findings of the trial court on the amount of damages because it failed to file a notice of review?

## ANALYSIS

### I.

*Accord and satisfaction*

■■■ An accord and satisfaction acts to discharge a contract or cause of action. "It is itself an executed contract, and it may be expressed or implied from circumstances which clearly and unequivocally indicate the intention of the parties." *Roaderick v. Lull Engineering Co., Inc.,* 296 Minn. 385, 389, 208 N.W.2d 761, 764 (1973). The supreme court has not held that an accord and satisfaction has been reached in any case where mutual agreement was lacking. *See Butch Levy Plumbing and Heating, Inc. v. Sallblad,* 267 Minn. 283, 290, 126 N.W.2d 380, 385 (1964). However, if an accord constitutes a binding contract and is fully performed, the original liability is then discharged. *Roaderick,* 296 Minn. at 389, 208 N.W.2d at 764.

■■■ If there is an honest dispute between the parties, a tender with the explicit understanding of both parties that it is in full payment of all demands, and an acceptance by the creditor with the understanding that the tender is accepted in full payment results in accord and satisfaction. *Youngstown Mines Corp. v. Prout,* 266 Minn. 450, 124 N.W.2d 328, 338 (1963). When a payment is made by check "*which is offered in full satisfaction of the debt,* retention and negotiation by the creditor, *with knowledge of all the facts,* constitutes

an acceptance of the offer to settle the indebtedness * * *." *Butch Levy Plumbing and Heating, Inc.,* 267 Minn. at 290, 126 N.W.2d at 385 (emphasis in original). It does not matter whether the debt is liquidated or unliquidated. *Id.*

■ In this case there was a bona fide dispute between Acton and the State regarding additional compensation but there was no dispute that Acton was entitled to $33,666.01. The question is whether Acton and the State mutually agreed that the $33,666.01 fully settled Acton's claim for the disputed amount. We hold the findings in this case do not support the conclusion that there was a mutual agreement between the parties. Under the circumstances of this case the certificate of final acceptance did not constitute an accord; the negotiation of the check was neither an accord and satisfaction nor evidence of one.

■ When Acton returned the certificate of final acceptance to the State, it attached a carefully drafted reservation of rights. It unequivocally indicated that it intended to preserve its claims. Thus, there was no express or implied agreement to discharge the contract or a cause of action by acceptance of the check. Since the reservation was clear on its face, the State should have contacted Acton and indicated that it would not release the $33,666.01 unless Acton withdrew the reservation and conceded that no claims were open, if that was the State's position. Our conclusion that there was no mutual agreement between the parties is further supported by the statement in the cover letter which accompanied the final voucher *and advised Acton about the time limit for making claims for additional compensation.* To a reasonably prudent businessman, the cover letter which the State sent with the certificate of final acceptance logically could be read to mean that even though the certificate was entitled "final acceptance," claims for additional compensation were still open if a detailed statement outlining the claim was submitted within 90 days. Acton's signed reservation of rights included a direct reference to its claim and supporting documentation submitted August 28, 1979. Acton was justified in believing that, since it had already submitted a detailed statement, it did not need to submit a duplicate within 90 days of receiving the letter from the State to comply.

■ Acton's carefully worded response to the State substantially complied with the State's invitation to make additional claims, and Acton cannot now be foreclosed on those additional claims by reason of having accepted a sum certain that the State agreed was owed regardless of any peripheral dispute.

■ Acton's negotiation of the check did not constitute an accord and satisfaction. The State was aware of the reservation of rights when it sent the check to Acton. Acton was not thereafter contacted by the State, so when it negotiated the check it was entitled to presume that the State accepted its reservation of rights. Thus it cannot be said that both parties understood that the State was paying all demands in full. Furthermore, the retention of an undisputed amount does not constitute an accord and satisfaction.

> The rule has always been clear that the mere retention by the creditor of money to which he is entitled absolutely will not amount to an accord and satisfaction although tendered or transmitted to him as payment in full of demand. In an accord and satisfaction, it is the mutual agreement of the parties to the terms of the *compromise* and not the dispute which furnishes the consideration for the release.

*Youngstown Mines Corp. v. Prout,* 266 Minn. at 463, 124 N.W.2d at 339 (quoting *Cut Price Super Markets v. Kingpin Foods, Inc.,* 256 Minn. 339, 356, 98 N.W.2d 257, 269 (1959)) (emphasis added). Since $33,666.01 was undisputed, Acton's retention of that amount did not constitute an accord and satisfaction.

### II.

*Damages*

■ The trial court found that because of the threat of liquidated damages, suppli-

er problems, and the State's failure to respond to Acton's requests, Acton incurred additional expenses of $26,694.68 in completing the project. The State makes various contentions with regard to this finding of damages. However, the State failed to file a notice of review. Therefore, the State is bound by the finding on amount of damages made thus far by the trial court which has not been appealed. *See*, Minn.R. Civ.App.P. 106.

## DECISION

We reverse on the issue of accord and satisfaction. The findings do not support the conclusion that under the circumstances of this case an accord and satisfaction resulted when Acton signed the certificate of final acceptance and negotiated a check in the amount set forth in the certificate. Because it failed to file a notice of review the State is bound by the finding of $26,-694.68 in damages made thus far by the trial court. We do note that since the trial court concluded that Acton's claim for recovery of additional damages was barred by accord and satisfaction, it did not reach the issue of whether Acton was entitled to that additional expenses, even if proven, under the contract. Therefore, we remand to the trial court to consider whether Acton can now collect those additional damages under the contract.

Reversed and remanded.