William F. HAGERMAN, Appellee,

v.

YUKON ENERGY
CORPORATION, Appellant,

and

David C. Tjosvold.

No. 87–5092.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 3, 1987.

Decided Feb. 9, 1988.

Rehearing and Rehearing En Banc
Denied March 23, 1988.

Samuel L. Hanson, Minneapolis, Minn., for appellant.

George R. Serdar, St. Paul, Minn., for appellee.

Before HEANEY, Circuit Judge, ROSS, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

ROSS, Senior Circuit Judge.

Appellee William F. Hagerman brought this action against David C. Tjosvold and appellant Yukon Energy Corporation for breach of contract, alleging that defendants failed to honor a stock option agreement between the parties. The district court[1] entered summary judgment on behalf of Hagerman and awarded him $290,317 in damages. Yukon appeals.[2] For the reasons set forth below, we affirm the judgment of the district court.

*Background*

Yukon manufactures furnaces for residential and commercial use. In 1983, Yukon purchased for $100,000 certain technology regarding the development of fuel efficient furnaces. Yukon and Hagerman subsequently negotiated an agreement for the funding of the technology. Pursuant to the agreement, which was drafted by Yukon's attorney, Hagerman purchased the technology from Yukon for $150,000. Hagerman then licensed the technology back to Yukon in exchange for royalties, subject to a minimum and maximum annual payment. Under the agreement, Yukon was given the option to repurchase the technology from Hagerman within ten years for $175,000. Additionally, in the event of a public offering of Yukon stock within ten years of the agreement, Hagerman was given the option to purchase at book value shares of Yukon stock in an amount equal to 5% of the shares owned by Yukon's president, David Tjosvold.

In October, 1984, Yukon exercised its option to repurchase the technology from Hagerman. On October 23, 1984, Tjosvold

---

1. The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

2. The district court also granted David C. Tjosvold's motion for summary judgment and dismissed him as a party. Tjosvold's dismissal is not at issue in this appeal.

delivered to Hagerman a check for $175,000, the repurchase price, and a check for $18,000 for one year's royalties. On that same day, Hagerman gave Yukon written notice of his intent to exercise his stock option in the event of a public offering of Yukon stock.

In November, 1984, Yukon filed registration statements for a public offering of common stock with the Securities and Exchange Commission and the Minnesota Department of Commerce. Although the public offering was made in early 1985, Yukon never transferred shares to Hagerman. Hagerman brought this action seeking damages or specific performance of the parties' 1983 agreement.

A hearing was held on Hagerman's motion for summary judgment in April, 1986. Yukon opposed the motion by arguing that the parties had orally modified their agreement, eliminating Hagerman's stock option. Yukon further argued that in accordance with the modification, Yukon's tender of the two checks to Hagerman fulfilled all of Yukon's obligations under the agreement. After the summary judgment hearing, the district court ordered the parties to submit supplemental briefs on the issue of damages. The district court subsequently entered judgment for Hagerman.

As to Yukon's liability for breach of the stock option, the district court found that Yukon raised no genuine issue of material fact as to whether the parties orally modified the technology agreement. The district court found that Yukon's actions subsequent to the alleged modification indicated that the agreement was not actually modified. The district court determined Hagerman's damages by figuring the difference between the contract price of the stock, as the court determined was set forth in the technology agreement, and the fair market value as of the first day of the public offering, and awarded Hagerman $290,317.

Yukon filed a motion to alter or amend judgment, and a hearing was held. The district court denied the motion without an opinion. On appeal, Yukon argues that the district court erred in granting summary judgment because Yukon raised genuine fact issues as to whether it breached the stock option provision and as to the remedy to be awarded Hagerman.

*Standard of Review*

In reviewing a district court's grant of summary judgment, this court is to apply the same standard that the district court was to have applied. *Stark v. St. Cloud State Univ.,* 802 F.2d 1046, 1048 (8th Cir. 1986). The Supreme Court recently stated that:

> [A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.... [T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted.)

In determining whether summary judgment should lie, the district court is to view the evidence in the light most favorable to the nonmoving party and give to that party the benefit of all inferences which reasonably may be drawn. *AgriStor Leasing v. Farrow,* 826 F.2d 732, 734 (8th Cir.1987).

*Breach of Contract*

Yukon argues that it raised a genuine issue of material fact as to whether it breached the technology agreement, such that summary judgment should have been precluded. In particular, Yukon contends that the stock option was terminated by an accord and satisfaction when Hagerman accepted the two checks from Yukon in full satisfaction of Yukon's obligations under the technology agreement. As evidence of the accord and satisfaction, Yukon presented Tjosvold's deposition testimony in which he stated that Yukon repurchased the technology from Hagerman at Hagerman's insistence. When Tjosvold gave Hagerman the two checks, Tjosvold told him "I understand that this ends our agreement, here is

your money like you wanted, like you requested before. I suppose that's it." Hagerman did not reply at the time, but negotiated the two checks. Yukon now argues that an accord and satisfaction was accomplished because Yukon made clear that the checks were in full settlement of all of Yukon's obligations, and Hagerman accepted the checks without contradiction. Consequently, Yukon asserts, the stock option was terminated.

Yukon accurately states the Minnesota law of accord and satisfaction:

If there is an honest dispute between the parties, a tender with the explicit understanding of both parties that it is in full payment of all demands, and an acceptance by the creditor with the understanding that the tender is accepted in full payment results in accord and satisfaction. When a payment is made by check *"which is offered in full satisfaction of the debt,* retention and negotiation by the creditor, *with knowledge of all the facts,* constitutes an acceptance of the offer to settle the indebtedness * * * *."

*Acton Constr. Co., Inc. v. State,* 363 N.W. 2d 130, 133–34 (Minn.App.1985) (quoting *Butch Levy Plumbing & Heating, Inc. v. Sallblad,* 267 Minn. 283, 290, 126 N.W.2d 380, 385 (1964) (emphasis in original) (citation omitted)).

The agreement constituting the accord and satisfaction need not be express, but may be " 'implied from circumstances which clearly and unequivocally indicate the intention of the parties.' " *Id.* at 133

(quoting *Roaderick v. Lull Eng'g Co., Inc.,* 296 Minn. 385, 389, 208 N.W.2d 761, 764 (1973)). In the absence of proof of an express agreement, the court is to consider the conduct of the parties. *Becker v. F & H Restaurant Group, Inc.,* 413 N.W.2d 202, 205 (Minn.App.1987). "The supreme court has not held that an accord and satisfaction has been reached in any case where mutual agreement was lacking." *Acton, supra,* 363 N.W.2d at 133.

■ The district court determined, and we agree, that Yukon failed to raise a genuine issue of material fact as to whether the parties mutually agreed to terminate Hagerman's stock option.[3] In making its determination, the district court looked to the conduct of the parties and determined that, except for Yukon's breach, the parties' conduct indicated that there was not an oral modification of the contract or an accord and satisfaction. The district court found determinative certain statements made by Yukon in the prospectus and stock registration statements in which Yukon affirmed the validity of Hagerman's option.

The prospectus prepared by Yukon's attorneys and dated February 14, 1985, detailed the technology agreement between Yukon and Hagerman. The prospectus stated that Yukon had repurchased the technology and that Hagerman had informed Yukon of his intention to exercise his stock option. The prospectus continued: "Accordingly, the Company will issue up to 164,021 shares of its Common Stock to such individual at approximately $.23 per share upon receipt of payment therefor."[4]

---

3. We further note that there is a question as to whether the doctrine of accord and satisfaction would apply in this case because in tendering the two checks to Hagerman, Yukon was doing no more than it was required to do under the technology agreement in order to exercise its option to repurchase the technology. " 'The rule has always been clear that the mere retention by the creditor of money to which he is entitled absolutely will not amount to an accord and satisfaction although tendered or transmitted to him as payment in full of demand.' " *Acton Constr. Co., Inc. v. State,* 363 N.W.2d 130, 134, (Minn.App.1985) (quoting *Youngstown Mines Corp. v. Prout,* 266 Minn. 450, 463, 124 N.W.2d 328, 339 (1963)). In response to this, Yukon contends that it was exercising the option only

because Hagerman demanded that it do so, rather than because it had an obligation to do so under the agreement. Because we find that Yukon failed to raise a genuine factual issue as to whether the parties agreed to terminate the stock option, we need not address this issue.

4. The prospectus provided in part:
The Company financed the purchase of such technology through the assignment of all of its interest in the technology to an unrelated individual in exchange for $150,000. In conjunction with such assignment, the Company received an irrevocable, exclusive 10–year license for use of the technology and a concurrent 10–year option to repurchase the technology for $175,000 and granted to such individ-

Hagerman's stock option is mentioned four other times in the prospectus. Nowhere in the prospectus is there any mention that Yukon disputed Hagerman's option or that Yukon had any defenses to the exercise of the option. The prospectus was incorporated into the registration statements filed with the Securities and Exchange Commission and the Minnesota Department of Commerce. Additionally, the parties' technology agreement was listed as an exhibit to the registration statement, again without qualification and without repudiation of the validity of Hagerman's stock option.

In order to explain the statements regarding Hagerman's option, Yukon offered the affidavit of one of the attorneys who prepared the prospectus. The attorney stated that shortly before February 15, 1985 (the date of the final prospectus), Tjosvold told the attorney that he disputed the validity of Hagerman's option because of certain conversations between Hagerman and Tjosvold. However, the prospectus was written as if no dispute existed because those preparing it thought that it would be "safest" to take a "worst case" position.

■ Yukon objects to the district court's determination that Yukon was "estopped from denying the truth of its own statements" in the prospectus and to the district court's statement that the prospectus statements "must be taken as true." In making such determinations, the district court noted that both the Securities Act of 1933, *see* 15 U.S.C. §§ 77k, 77*l* and 77x (1982), and the Minnesota Uniform Securities Act, *see* Minn.Stat.Ann. §§ 80A.17 and 80A.22–23 (West 1986 & Supp.1988), provide substantial penalties for the making of false statements in a prospectus which accompanies a registration statement. We agree with Yukon that the statements in the prospectus and registration statements are not conclusive admissions. *See Enquip, Inc. v.*

*Smith–McDonald Corp.*, 655 F.2d 115, 118 (7th Cir.1981) (pleadings from another case are admissible as admissions, although they are not conclusive); *Brown & Root, Inc. v. American Home Assurance Co.*, 353 F.2d 113, 116 (5th Cir.1965) *cert. denied*, 384 U.S. 943, 86 S.Ct. 1465, 16 L.Ed. 2d 541 (1966) (holding that "except for those specialized, rare assertions characterized as judicial admissions, a party is entitled to explain an admission and even to retract it.") However, the statements may be considered as evidence of whether there was in fact an oral modification of the parties' agreement or an accord and satisfaction.

Even considering the statements in Yukon's prospectus to be evidentiary rather than conclusive admissions, we agree with the district court that Yukon failed to establish the existence of a genuine factual issue as to whether the parties mutually agreed to terminate Hagerman's option. As noted previously, in the absence of an express agreement, a court is to look to the conduct of the parties. In this case, the evidence of the parties' conduct following the alleged accord and satisfaction consisted of Hagerman's attempt to exercise the option and Yukon's preparation of the stock prospectus in which it unequivocally affirmed the validity of Hagerman's stock option. Such conduct belies Tjosvold's assertion of a mutual agreement. Yukon presents no other evidence of conduct on its own part or by Hagerman which indicates that the parties reached a mutual agreement to terminate the written stock option. For example, Yukon presents no evidence that when Hagerman gave written notice of his intent to exercise the stock option, Yukon gave written response that it no longer considered the option to be in effect. We find that Yukon failed to create a genuine issue of material fact as to whether there was an oral modification or

ual an option to purchase a number of shares equal to 5% of the number of shares of Common Stock of the Company held by David C. Tjosvold immediately prior to any public offering of the Common Stock of the Company, exercisable at the book value of the Company at the time of exercise. In October 1984, the

Company exercised its option to repurchase the technology and the individual notified the Company of his intent to exercise his purchase option. Accordingly, the Company will issue up to 164,021 shares of its Common Stock to such individual at approximately $.23 per share upon receipt of payment therefor.

an accord and satisfaction. Therefore, summary judgment was appropriate.

Yukon next argues that it raised a fact question as to whether Hagerman was estopped from enforcing the stock provision by his own failure to perform an oral agreement between the parties. According to Yukon, at the time the technology agreement was entered, the parties also orally agreed that if Yukon ever had a public offering of stock of $5,000,000, Hagerman would fund it up to $2,000,000. Because Hagerman did not fund Yukon's actual stock offering, Yukon contends that he is estopped by his own breach from enforcing the stock option.

In support of its argument, Yukon presented Tjosvold's deposition testimony that Hagerman and he had the following conversation:

> [Hagerman] said say you have a $5,000,-000 stock underwriting, how about if I put up two million of the $5,000,000 for the underwriting. I said, well, that sounds pretty good. He said, "Well, that's what I can do. If you need up to $2,000,000 to make sure it gets done, I have got it."

■ Again, because there is no express evidence of this agreement, we look to the conduct of the parties. Yukon presented no evidence that Yukon ever approached Hagerman about funding part of Yukon's actual public offering. Additionally, as noted, the prospectus for Yukon's stock unequivocally affirmed the validity of Hagerman's option, without mentioning that Yukon disputed the option for any reason. Yukon failed to raise a genuine issue of material fact as to the question of estoppel, and therefore we affirm the order of the district court as to Yukon's breach for failing to honor Hagerman's stock option.

*Remedy*

As correctly stated by the district court, the appropriate measure of recovery to compensate Hagerman for Yukon's breach would be to place Hagerman in the same position he would have occupied absent the breach. *See Desnick v. Mast,* 311 Minn. 356, 364, 249 N.W.2d 878, 883 (1976). The district court determined that this remedy should be damages, measured by the difference between the contract price of the stock which Hagerman should have received and its fair market value.

In figuring Hagerman's damages, the district court found the contract price to be set out in the technology agreement, which gave Hagerman the "option to purchase shares of Yukon equal to 5% of the share [sic] owned by David C. Tjosvold, President, at book value as determined by the accounting firm of Peat, Marwick & Mitchell." In the prospectus, Yukon stated that 5% of Tjosvold's shares equalled 164,021 shares, and that Peat, Marwick & Mitchell had determined the book value as of the date Hagerman exercised his option to be approximately $.23 per share. *See* note 4, *supra.* Therefore, the district court figured the contract price to be 164,021 shares multiplied by $.23 per share, for a sum of $37,725.

In figuring the fair market value of the stock, the district court determined that the breach occurred on the first day Yukon stock was offered to the public, March 28, 1985. On that day, the market price for Yukon stock was $2.00 per share. Therefore, the fair market value of the 164,021 shares to be issued Hagerman was $328,-042. Calculating the fair market value less the contract price, the district court determined Hagerman's damages to be $290,-317.

Yukon contends that summary judgment was improperly granted with regard to Hagerman's remedy for two primary reasons. First, Yukon argues that specific performance rather than damages was the appropriate remedy in this case because Hagerman's monetary damages were too speculative. Second, Yukon contends that even if damages were the preferred remedy, the amount of Hagerman's damages should have been a jury question because of the many variables present in assessing the market value of the shares Hagerman was to have received. Central to both of these arguments is Yukon's contention that Hagerman was to have received unregistered rather than registered shares of Yu-

kon stock. Yukon presented evidence that because of restrictions on transferability of unregistered shares, Hagerman's shares would have had a market value considerably less than the $2.00 per share awarded by the district court.[5]

In support of its argument that Hagerman's shares were to be unregistered, Yukon submitted the affidavit of John Ellingboe, one of the attorneys who helped prepare Yukon's stock prospectus. Ellingboe stated that in his opinion, Hagerman was to receive unregistered stock under the technology agreement. Yukon also submitted the affidavits of two securities experts who stated that the value of the shares Hagerman was to receive should be subtantially discounted because they were unregistered.

However, a review of the record indicates that Yukon failed to raise the issue of whether Hagerman's shares were to be registered until its motion to alter or amend judgment, made after the district court granted summary judgment for Hagerman.[6] Therefore, we consider whether the district court erred in granting Hagerman's motion for summary judgment based on the record before the district court at the time it ruled on the summary judgment motion.

■ At no time prior to the district court's grant of summary judgment did Yukon raise the issue that Hagerman's damages should be discounted because his shares were to be unregistered. In fact, at the summary judgment hearing, instead of arguing that Hagerman's shares were to be unregistered, Yukon's attorney informed the district court to the contrary:

The Court: Were the shares under the agreement to have been lettered [7] in any regard?

[Yukon's attorney]: No, Your Honor.
The Court: So, they would have been freely disposable at that time?
[Yukon's attorney]: Yes, Your Honor.

Subsequent to the summary judgment hearing, the parties filed supplemental memoranda regarding the issue of damages at the court's direction. Again, Yukon failed to contend that the shares were to be unregistered.[8]

The district court issued its order granting summary judgment for Yukon on October 22, 1986. On October 31, 1986, Yukon filed its notice of motion to alter or amend judgment, in which it contended for the first time that Hagerman's shares were to be unregistered. At this time Yukon also presented to the district court for the first time the Ellingboe affidavit and the two affidavits of the securities experts regarding the valuation of unregistered shares. The district court denied Yukon's motion to alter or amend judgment.

Therefore, at the time it ruled on Hagerman's motion for summary judgment, the district court had before it only evidence of the fair market value of the shares Hagerman was to receive had they been registered. Yukon had failed to raise a genuine fact issue that the shares were to be unregistered. Therefore, the district court properly granted summary judgment for Hagerman with damages based on the value of registered shares.

The next question that arises, then, is whether the district court erred in failing to grant Yukon's motion to alter or amend judgment based on Yukon's new argument that the shares were to be unregistered. A district court has broad discretion in determining whether to grant a motion to alter or amend judgment, and this court will not reverse absent a clear abuse of discretion

5. S.E.C. Rule 144 generally restricts the transferability of unregistered stock for a two year period. *See* 17 C.F.R. § 230.144 (1987).

6. We note that counsel for Yukon on this appeal did not represent Yukon in the district court proceedings.

7. Unregistered shares are also referred to as "lettered" shares.

8. Hagerman's supplemental memorandum regarding damages anticipated that Yukon would argue that the shares were to be unregistered, and therefore Hagerman argued to the contrary. However, in its supplemental memorandum, which was filed the same day as Hagerman's, Yukon did not raise the issue that the shares were to be unregistered.

by the district court. *See Harris v. Arkansas Dept. of Human Serv.*, 771 F.2d 414, 416–17 (8th Cir.1985). We find no such abuse of discretion in this case.

As the Seventh Circuit recently stated:

"Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence. Such motions cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during pendency of the summary judgment motion. The nonmovant has an affirmative duty to come forward to meet a properly supported motion for summary judgment.... Nor should a motion for reconsideration serve as the occasion to tender new legal theories for the first time."

*Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir.), *as amended*, 835 F.2d 710 (7th Cir.1987) (quoting *Keene Corp. v. International Fidelity Ins. Co.*, 561 F.Supp. 656, 665–66 (N.D.Ill.1983), *aff'd*, 736 F.2d 388 (7th Cir.1984)). A motion to alter or amend judgment cannot be used to raise arguments which could have been raised prior to the issuance of judgment. *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986). *See also, Whitlock v. Midwest Acceptance Corp.*, 575 F.2d 652, 653 n. 1 (8th Cir.1978) (holding that district court properly denied plaintiffs' motion for relief of judgment based on newly submitted affidavits which tended to prove plaintiffs' allegations where the information in the affidavits had been available prior to entry of summary judgment and plaintiffs failed to explain why the affidavits were not submitted earlier).

In the present case, Yukon does not contend that it was unable to raise the issue of the registration of the shares prior to the entry of summary judgment.[9] Nor does it assert that it was unable to present the affidavits of Ellingboe and the securities experts prior to the time it filed its motion to alter or amend judgment. Therefore, the district court did not abuse its discretion in denying Yukon's motion to alter or amend judgment.

Yukon next argues that even if the shares were to be registered, it raised genuine fact issues as to the date of Yukon's breach of the stock provision and as to the book value to be assigned to Hagerman's shares. With regard to the date of the breach, Yukon argues that the breach occurred on October 23, 1984, the date Hagerman notified Yukon of his intent to exercise the stock option. Yukon asserts that this affects Hagerman's damages, because the market price of Yukon stock on October 23, 1984, was approximately 50 cents a share. However, as the district court properly noted, the technology agreement provided that Hagerman's option was valid only in the event of a public offering of Yukon stock. The public offering occurred on March 28, 1985, at which time the fair market value of the stock was $2.00 per share. We agree that Yukon failed to raise a factual question as to the date of the breach.

Yukon also argues that it raised a fact question as to the book value of the stock. The prospectus simply provided that Yukon was to sell the shares to Hagerman at book value as determined by the accounting firm of Peat, Marwick & Mitchell. The agreement did not say which date was to be considered in determining book value. In finding a book value of $.23 per share, the

---

**9.** In its memorandum in support of its motion to alter or amend judgment, Yukon argued that it had not previously had the opportunity to address Hagerman's damages with regard to a March, 1985 date of breach, thereby impliedly arguing that it did not have the opportunity to argue whether the shares were to be registered. Yukon's position prior to its motion to alter or amend judgment had been that the breach occurred in October, 1984, before any of the shares were registered. However, at the summary judgment hearing, Hagerman argued that the breach occurred at the earliest on March 28, 1985, the first day Yukon stock was offered to the public. Additionally, the district court at the summary judgment hearing specifically asked Yukon's attorney whether Hagerman's shares were to be registered. Therefore, Yukon had ample opportunity to raise the issue of the registration of Hagerman's shares prior to the district court's entry of summary judgment.

district court relied on Yukon's statements in its prospectus in which it stated that Hagerman had the option to purchase the shares "exercisable at the book value of the Company at the time of exercise." *See* note 4, *supra.* The prospectus continued that in October, 1984, Yukon stock had a book value of $.23 per share.

■ Yukon now argues that the book value of the shares ought to be determined as of the date of the breach. Yukon argues that the prospectus showed that as of the date of the breach, March 28, 1985, the book value of the stock was $.65 per share. However, a review of the prospectus shows that Yukon's argument is without merit. The figure asserted by Yukon to be the stock's book value as of March 28, 1985, is actually listed in the prospectus as the "pro forma net tangible book value after offering," figured as of September 30, 1984. This figure represents the amount of Yukon's total tangible assets less its total tangible liabilities, giving effect to issuance of 1,000,000 shares of Yukon stock at $2.50 per share, as of September 30, 1984. Thus, this figure does not accurately reflect the actual book value of the stock as of the date of the breach. Yukon failed to offer any other evidence as to the stock's book value. Therefore, the district court did not err in granting summary judgment on this issue.

*Conclusion*

For the foregoing reasons, we affirm the judgment of the district court.