**In re BRAZIER FOREST PRODUCTS,
et al., Debtors.**

**GRAVES LOGGING CO., Appellant,**

**v.**

**BRAZIER FOREST PRODUCTS OF
OREGON, INC.; Rainier National
Bank, Appellees.**

**No. C88–1191M.**

United States District Court,
W.D. Washington,
at Seattle.

April 13, 1989.

J. Richard Manning, Seattle, Wash., for
appellant Graves Logging Co.

Sheena Ramona Aebig, Shulkin, Hutton
& Bucknell, Seattle, Wash., for Brazier
Forest.

Lynn Christine Tuttle, Hatch & Leslie,
Seattle, Wash., for Rainier Nat. Bank.

---

ORDER AFFIRMING BANKRUPTCY
COURT'S DECISIONS

McGOVERN, District Judge.

## INTRODUCTION

This appeal arises out of Brazier's reorganization under Bankruptcy Code Chapter 11 on August 17, 1984.

Graves delivered logs to the Brazier mill (the Molalla mill site) and to third-party mills pursuant to contract, for a fixed contract price.

Brazier commenced an adversary proceeding to determine validity, priority, and amount of the lien claims of the loggers. Brazier obtained consent from the loggers to sell the log inventory at its Molalla, Oregon mill site free and clear of the logger liens and to substitute the proceeds from the sale of the log inventory as collateral for the Oregon logger liens.

On Brazier's motion for Distribution, the Oregon loggers were paid, and Graves received $80,054 plus interest to date of payment. That amount represented the logging contract price owed to Graves for deliveries to the Molalla mill site. Graves has not been paid a remaining $48,131.21 for services with respect to logs delivered to third-party mills.

In denying Graves' Motion for Summary Judgment and granting the motion of the debtor and Rainier, the Bankruptcy Judge concluded:

(1) The sale of logs pursuant to 11 U.S.C. § 363 allows a trustee only to sell assets of the debtor; the logs delivered to the third-party mills were not assets of the debtor;

(2) In order to obtain a lien on proceeds in the hands of a third party, Oregon law (ORS 87.2362) requires that timely notice be given to the third party. Timely notice was not given to the third-party mills;

(3) The argument that the debtor failed to adequately protect the creditor and that the debtor is estopped to deny the validity of the lien was unavailing as the debtor set aside almost $1 million to satisfy valid liens—more than enough to cover the liens—but the lien was not valid. Furthermore, the Court failed to see how the estoppel argument could be applied against Rainier, another secured creditor;

(4) The equitable lien argument was inapt as a specific statutory lien was involved, not an equitable lien.

Graves then filed a Motion for Reconsideration. Graves argued that since it had filed it's claim against the Molalla logs for the full amount of $128,574.26, it could realize the total amount of its claim from the value of the logs delivered; it argued that it need not have perfected its lien as to the logs delivered to the third-party mills as that was simply an alternative way in which it could realize upon the collateral. The proceeds realized from the sale of the Molalla logs delivered by Graves would cover the remainder of its debt and there was no need to seek a perfected lien upon the logs at the third-party mills. As stated by the Bankruptcy Judge:

THE COURT: I take it you're arguing now that, inasmuch as the logs that were delivered to Molalla were worth substantially more than the $80,000, therefore, the balance of the lien should attach to the full value of those logs as to Brazier?

MR. MANNING: That is correct. That sums it up in a nutshell. To the extent that there is value sufficient to satisfy the lien.

(Appendix at 429–30.)

Rainier and the debtor, however, disputed that the value of the logs was ever determined to be other than $80,000; while the debtor may have been able to sell them at a profit, they also may have had an $80,000 liquidation value to Graves or some figure close to that if the logs were quickly dumped on the market. The Court posed the question:

THE COURT: All right. Let's assume they are worth more than $80,000. What happens then?

MR. MERKLE: Well, we have to go back to discovery to determine the value of the logs; to see if we can even get into their theory that the deficiency representing labor for logs delivered to third

party mill sites can be applied against the excess value in the logs delivered to Brazier above $80,000. And because we haven't had a fact asserted by Graves, there hasn't even been any issue to research—any reason to research that issue.... So, we have to go back into discovery for several months to look the value—we're going back to 1984, four years ago, the value of those logs in that market.

(App. 445–46.) The Court then stated near the end of the hearing:

THE COURT: It seems clear that the theory that Graves is now or the argument that Graves is now making was really not clearly enunciated to the bank or the debtor or to the Court until this last pleading, which came in this morning. And that first raises the issue that Mr. Merkle was making; namely, when is it too late?

(App. 452.) As the precise theory argued by Graves came up on the morning set for argument on the motion for reconsideration, the Bankruptcy Court then asked the parties to file simultaneous briefs on the issue of when it is too late to urge a new theory.

In its Opinion and Order on Motion for Reconsideration, 91 B.R. 566, Judge Steiner set forth the history on the motions for summary judgment noting that *on the day of the hearing on the motions,* Graves filed a supplemental memorandum that added a fourth theory "that all charges under a single contract may be asserted against a portion of the subject personal property involved in the contract. According to this theory, because the contract was not severable, the lien attached to all of the logs cut by Graves pursuant to the contract and to all the manufactured products of those logs in their changed form." (App. 511.) *On the day before the Motion for Reconsideration was to be heard,* Graves filed a fifth, legal theory:

The essence of Graves' new argument is that it is entitled to assert the full amount of its lien against the logs delivered to Brazier's mill because the value of the logs so delivered (as opposed to the manufactured products of those logs, as previously asserted) exceeds the total amount of the lien. Graves contends that while the amount of the labor expended by it on the liened logs delivered to the Brazier mill was $80,000, and another 48,000 is claimed as liened for labor on logs delivered to third-party mills, the value of the logs delivered to Brazier's mill exceeds the $120,000 total. In conclusion, Graves argues that inasmuch as the value of the logs it delivered to the debtor's mill exceeds the amount of its lien, it has presented a valid and controlling theory of law which warrants the granting of its motion for summary judgment.

(App. 511–12).

The Court went on to discuss the authorities on the issue of whether a new legal theory asserted for the first time in a motion for reconsideration of an order granting or denying summary judgment. The Bankruptcy Court cited several Courts of Appeal that had addressed the issue. For example, *Hagerman, v. Yukon Energy Corp.,* 839 F.2d 407 (8th Cir.1988), *petition for cert. filed,* 56 U.S.L.W. 3834 (U.S. May 23, 1988) (No. 87–1919) concerned breach of contract to honor stock options. The District Court granted summary judgment for the plaintiff and awarded him $290,000 damages. The defendant filed a motion to amend and argued, among other things, that the remedy of damages was incorrect as the stock plaintiff was to have received involved unregistered, rather than registered, shares. The Eighth Circuit rejected the argument raised for the first time on the motion to amend and quoted the Seventh Circuit:

Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence. Such motions cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during pendency of the summary judgment motion. The non-movant has an affirmative duty to come forward to meet a properly supported motion for summary judgment ... Nor should a motion for reconsideration serve as the oc-

casion to tender new legal theories for the first time.

*Id.* at 414. In another court, a litigant failed to present any reason for not presenting his arguments earlier than the motion for reconsideration, and the Court held:

"A litigant should not be permitted to assert its arguments seriatim, especially after losing at summary judgment.... A motion for reconsideration is an improper vehicle to tender new legal theories not raised in opposition to summary judgment."

*Great Hawaiian Financial Corp. v. Aiu,* 116 F.R.D. 612 (D.Hawaii 1987).

In conclusion, Judge Steiner held:

1. As a procedural matter in motions for summary judgment, parties are required to raise all issues so that the courts do not face piecemeal litigation. If legal theories are not raised in the initial motion, it is untimely to bring them up on a motion for reconsideration, particularly where the evidence and theories could have been readily presented as part of the initial motion.

(App. 516.) Additionally, the Bankruptcy Court adhered to its positions on Graves' original four theories, and, thus, declared it unnecessary to address the merits of Graves' fifth and latest legal theory. (App. 516.)

Graves makes four arguments on appeal, and they will be considered in the order presented.

### Argument 1

Graves argues that its logger lien in its entire amount should have been paid from the proceeds of the sale from the logs at Molalla since the value of the logs delivered by Graves to Molalla exceeded the amount of the lien. ORS 87.236(2) only provides an alternate (not mutually exclusive) source of lien collateral.

Since July 1985 when Rainier and Brazier raised issues as to whether Graves was entitled to payment on its claim for deliveries to the third-party mills, Graves engaged in discovery until November 1987 when it filed its motion for summary judgment. (An overlength brief at 29 pages that the Court stopped reading at page 25 and ten exhibits totalling approximately 200 pages.) (App. 272, 740–942.)

It appears from the record that there was ample time for Graves to gather the information it needed to present arguments on its entitlement to recover on its claims relating to deliveries to the third-party mills. It also appears that on another occasion, Graves had presented a last minute argument.

■ The Bankruptcy Judge properly denied Graves the opportunity to argue its new legal theory on the motion to reconsider. The Ninth Circuit has held:

[T]o support a motion for reconsideration of a grant of summary judgment based upon newly discovered evidence, the movant is *"obliged* to show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence at the hearing."

*Frederick S. Wyle P.C. v. Texaco, Inc.,* 764 F.2d 604, 609 (9th Cir.1985). In a case from this district, after entry of summary judgment, the Court concluded with respect to an argument made for the first time:

These "new" facts and theories were clearly available to defendants at the time of the earlier ruling, and defendants had ample time and opportunity to present them to the Court.... Although defendants vigorously opposed plaintiff's theory of novation, at no time did defendants raise as a defense to novation the corporate relationship between the various lessees or the intent of the assignors/assignees. Defendants in fact agreed that the issues ... could be decided as matters of law.

*Fay Corp. v. Bat Holding I, Inc.,* 651 F.Supp. 307, 308 (W.D.Wash.1987) (Dimmick, J.).

The Bankruptcy Judge's analysis in denying Graves the opportunity to argue its new theory on reconsideration was sound, and the merits of the theory presented in Graves' first argument will not be considered in this appeal. The Bankruptcy Judge's Opinion and Order on Reconsideration is AFFIRMED.

### Argument 2

■ Referring to its statement of the issues in its brief, Graves argues on issues 2 and 3 that Brazier's and Rainier's failure to provide affidavits, depositions, or other evidentiary facts in support of their cross-motion for summary judgment and in opposition to Graves' motion requires the court to deny their motion and grant Graves' motion.

Where a cross-motion for summary judgment is made, "if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." 10A Wright & Miller, *Fed.Prac. & Proc.* § 2720 at 24–25 and n. 14 (2d ed. 1983). Graves had admitted in both its Motion for Summary Judgment and Motion for Reconsideration that there were no disputed issues of material facts. (App. 178, 11. 3–4 ("there is no genuine issue as to any material facts and defendant Graves is entitled to judgment as a matter of law."); App. 318, 11. 21–22 ("All of the parties and the court have agreed there is no dispute of fact."))

In its Motion and Memorandum for Reconsideration, Graves quoted the Bankruptcy Court's reasoning and stated: .

There is nothing wrong with this reasoning except that it fails to take into account and begs the question of the real issue as to Graves' claim: Were the logs that *were delivered to Brazier's own Molalla mill* impressed with a lien for the value of *all services* (including logs) ordered by Brazier, even though some logs went to third-party mills? A corollary of this issue is whether Graves is entitled to satisfy its entire lien claim for all services ordered by Brazier out of that portion of the logs delivered to Brazier's own Molalla mill. (App. 318)

(App. 319–20; emphasis in original.) Graves did not quarrel with the Bankruptcy Court's rationale, but it added its new legal theory. In doing so, it pointed out that "the cases and authorities discussed are being brought into this for the first time...."

There being no flaw in the Bankruptcy Court's rationale for Granting Summary Judgment for Brazier and Rainier, there being no material issues of fact, and the Bankruptcy Court having properly denied reconsideration based on the new legal theory, the Bankruptcy Court's Order for Summary Judgment in favor of Brazier and Rainier is AFFIRMED.

### Argument 3

Graves argues with respect to its fourth issue that "[t]he bankruptcy judge erred by ruling that Graves' argument in the Motion for Reconsideration was not timely raised when it had been previously raised and argued at the original Motion for Summary Judgment and Brazier and Rainier showed no prejudice for any delay. By denying Graves the opportunity to correct the bankruptcy judge's erroneous ruling on summary judgment, Graves was denied due process of law." (Graves Brief at 30.)

For the reasons stated in this Court's discussion of "Argument 1", the Bankruptcy Court did not err in ruling that Graves' argument in the Motion for Reconsideration was not timely raised, and the ruling is AFFIRMED.

### Argument 4

■ Graves contends that it is entitled to its costs and reasonable attorney's fees on appeal.

The logging contract executed by Brazier and Graves provides for reasonable attorney's fees for the prevailing party in a cause of action to enforce the terms of the contract, or claim for damages under the contract. Graves is not the prevailing party on this appeal; moreover, the need for this appeal was generated by Graves failure to clearly and timely articulate its legal theories when it brought its motion for summary judgment. Accordingly, Graves' request for costs and attorney's fees is DENIED.

### CONCLUSION

The Bankruptcy Court's decisions in all respects are AFFIRMED and Graves is DENIED costs and attorney's fees.