**R.M. PARRANTO COMPANY, INC., Respondent,**

v.

**Herbert BERNICK, Appellant.**

**No. C5–84–181.**

Court of Appeals of Minnesota.

Sept. 18, 1984.

Mark S. Genereux, Douglas B. Fink Law Offices, P.A., St. Paul, for respondent.

Neal J. Shapiro, Bernick & Shapiro, Chartered, Minneapolis, for appellant.

Heard, considered and decided by POPOVICH, C.J., and LESLIE and CRIPPEN, JJ.

## OPINION

LESLIE, Judgè.

Plaintiff R.M. Parranto Company, Inc. brought this action against defendant Bernick for a real estate commission allegedly due and owing. After a trial without a jury, the trial court ordered judgment for plaintiff. Defendant appeals from that judgment. We affirm.

## FACTS

In July 1980 Leland A. Holm listed an improved commercial property in the St. Paul midway area with plaintiff R.M. Parranto Co., a real estate brokerage firm. The listing agreement provided a commission to plaintiff if Holm sold or leased the property. In the months that followed plaintiff attempted to sell or lease the property and showed the property to numerous parties.

In January 1981 defendant Bernick, a clothing merchant, indicated an interest in purchasing the property. Defendant wanted one-half of the building for his business and stated he would only purchase the property if a tenant were located to lease the other half of the building. Holm and the defendant exchanged offers through plaintiff in early 1981. During those negotiations plaintiff also intermediated negotiations between defendant and a prospective tenant, Bob Rynda d/b/a Kampa Tire Company, for the other half of the building. Defendant and Rynda negotiated remodel-

ing the building as well as rent and other lease terms. Plaintiff solicited remodeling designs for the building and showed those designs to Rynda and defendant.

Meanwhile the sale negotiations between Holm and defendant were at loggerheads. The trial court described the compromise which broke the deadlock as follows:

> The sale negotiation got to the point that Holm would not sell for less than $265,000.00 and Bernick would not pay more than $260,000.00. Holm agreed to reduce the price to $260,000.00 only if his obligation for a sales commission would be reduced to $10,000.00. Plaintiff and [defendant] (prior to the amendment of the price on the purchase agreement) discussed the impasse on the purchase price and orally agreed with each other, that in order to complete the transaction that plaintiff would reduce his sales commission to $10,000.00 and in exchange therefore the defendant would pay a leasing fee of 3% of the rents as would be collected on the lease with Rynda (Kampa Tire Co.). Based upon this arrangement the purchase price was reduced and the purchase agreement signed. The agreement between the plaintiff and defendant was confirmed by the signature of the defendant to a letter of intent dated April 14, 1981.

The April 14, 1981 letter of intent described the property's size and location, specified the annual rent and a 5-year lease term and elaborated other terms and conditions. Paragraph 10 of the letter of intent provided:

> A leasing fee shall be paid the R.M. Parranto Company in the amount of 3% of the rent as collected which shall be payable by lessor whether the lessor is the present owner or the ultimate purchaser of the property.

Defendant and Holm completed sale of the property shortly thereafter. On May 20, 1981, defendant and Rynda executed a lease conforming to the terms of the April 14, 1981 letter of intent.

Plaintiff later demanded payment of the lease commission from defendant. Defend-

ant refused to pay, explaining that his brother, a lawyer, told him he did not have to pay.

At trial defendant claimed that when he signed the letter of intent he did not intend paragraph 10 to be part of the agreement. He testified he had not seen that paragraph or the same paragraph contained in an earlier draft of the letter of intent.

The trial court rejected the defendant's claim that he did not agree to the commission because defendant, an experienced businessman, had made substantial changes to the earlier letter of intent but none to that paragraph. The trial court found that the parties never executed a formal listing agreement but that the April 14, 1981 letter of intent, the Holm/plaintiff listing agreement, and the parties' oral agreement formed a sufficient written listing agreement to satisfy Minn.Stat. § 82.33 subd. 2.

## ISSUES

1. Is the statutory requirement that real property be listed in writing met under the circumstances of this case?

2. Does plaintiff's failure to plead and prove its real estate agent's licensure bar recovery of a commission when defendant failed to assert that defense at trial?

## ANALYSIS

*Written listing of the property*

Minn.Stat. § 82.33 subd. 2 (1982) provides:

> No person required by this chapter to be licensed shall bring or maintain any action in the courts for any commission, fee or other compensation with respect to the sale, lease or other disposition or conveyance of real property, or with respect to the negotiation or attempt to negotiate any sale, lease or other disposition or conveyance of real property unless such property was first listed in writing for sale, lease or other disposition with the person bringing or maintaining the action.

In 1973 the supreme court decided a case under this statute, then codified as Minn. Stat. 82.16 subd. 3. *Rueben v. Gibbs*, 297 Minn. 321, 210 N.W.2d 857 (1973). In *Reuben* defendant claimed plaintiff real estate agent could not recover a sales commission because no listing agreement was reduced to writing. Plaintiff contended that a "supplement to earnest money contract" signed by defendant the day after execution of the earnest money contract satisfied the writing requirement. The "supplement" read in part:

> Sellers of above property agree to pay Creative Realty, Co. a realtor fee of 5% of sale price upon completion and closing of home.

The supreme court, noting first that the statute does not define a listing agreement, held that the writing substantially complied with the statute:

> Common sense would indicate that a listing agreement contain at least an authorization to sell. The agreement clearly implies a right of the plaintiff to offer the property for sale. The rate of commission is clearly specified. The agreement could serve no other purpose in the transaction and defendant did not dispute that but for the statute some commission was due plaintiff. Under the facts and circumstances of this case, we hold the agreement to be in substantial compliance with the requirement of the statute.

*Id.* at 323, 210 N.W.2d at 858.

Since *Rueben*, the legislature has authorized the Commissioner of Securities and Real Estate to promulgate rules governing real estate brokers. Minn.Stat. § 82.28 (1982). The Commissioner promulgated Minnesota Rules 2800.3800 subp. 2 which at the time of the transaction defined a listing agreement as follows:

> **Contents.** All listing agreements shall be in writing and shall include:
>
> A. a definite expiration date;
>
> B. a description of the property involved;
>
> C. the list price and any terms required by the seller;
>
> D. the amount of any compensation or commission or the basis for computing the commission;
>
> E. a clear statement explaining the events or conditions that will entitle a broker to a commission;
>
> F. information regarding an override clause, if applicable, including a statement to the effect that the override clause will not be effective unless the licensee supplies the seller with a protective list within 72 hours after the expiration of the listing agreement.

■ The initial question here is whether the Commissioner's promulgation of the above definition changes the *Rueben* substantial compliance rule. Defendant argues that the law requires strict compliance with the statute and the rules defining a listing agreement, citing *Dellwood Enterprises, Inc. v. Pacific American Real Estate Fund, 1971,* 505 F.Supp. 187 (D.Minn.1981) *aff'd* 653 F.2d 350 (8th Cir. 1981) and *Relocation Realty Services Corp. v. Carlson Companies, Inc.,* 264 N.W.2d 643 (Minn.1978). In both *Relocation Realty* and *Dellwood,* however, the first subdivision of Minn.Stat. § 82.33 was at issue rather than the second subdivision which applies here. Neither case addressed 2800.3800 subp. 2 nor listing agreements. We hold the *Rueben* substantial compliance rule still applies but now substantial compliance must be with 2800.3800 subp. 2, as well as with section 82.33 subd. 2.

■ Under the circumstances of this case we find that the April 14, 1981 letter of intent substantially complies with section 82.33 subd. 2 and 2800.3800 subp. 2. The letter of intent contains a description of the property, the rental price, and the basis for computing the commission. Because it makes commissions payable upon payment of rent, it sufficiently specifies the condition upon which the commission is due. While it does not contain an expiration date, it does place commencement of the lease at June 1, 1981, thus giving a sufficiently definite deadline within which the lease transaction must be completed.

Although the letter of intent was not intended as a formal listing agreement, it adequately specifies the required terms and shows defendant's intent to be bound through his signature.

The legislature intended Minn.Stat. § 82.-33 subd. 2 to protect innocent persons from unethical or overreaching real estate brokerage practices. *See PMH Properties v. Nichols*, 263 N.W.2d 799, 802 (Minn.1978). Here the evidence supports the trial court's conclusion that defendant has raised this defense not because he did not intend the commission agreement but because he believed the law would not hold him to the agreement. Applying the defense here would unjustly benefit defendant, deprive plaintiff of a commission fairly earned, and it would not further the legislative purpose.

*Pleading and proving a real estate broker's license*

Defendant argues that judgment for plaintiff should be reversed because plaintiff failed to plead or prove it held a real estate broker's license. Defendant did not raise this position at trial, but claims plaintiff has thus failed to make its prima facie case.

Minn.Stat. § 82.33 subd. 1 (1982) provides:

> No person shall bring or maintain any action in the courts of this state for the collection of compensation for the performance of any of the acts for which a license is required under this chapter without alleging and proving that he was a duly licensed real estate broker or salesperson at the time the alleged cause of action arose.

While the language of this statute might imply that proof of a real estate license is an element of a prima facie case for recovery of a real estate sales commission, the supreme court has held it is a defense which may be waived:

> The provision requiring the allegation and proof of the existence of a license is more in the nature of a statute of limitations, which creates a defense which might be waived by a defendant who fails to assert it. (Footnote omitted.) It

is established that a defendant, by answering to the merits and going to trial without in any manner attempting to avail himself of a statute of limitations, waives such defense, although it appears on the face of the complaint that the statute has run. (Citations omitted.) The same rule applies here. We conclude that Minn.Stat. 82.16 [now codified as Minn.Stat. § 82.33 subd. 1] is remedial; it regulates or limits the enforcement of a right and provides a defense which may be waived.

*Albers v. Fitschen*, 274 Minn. 375, 377, 143 N.W.2d 841, 843 (1966). *See also, Nodland v. Chirpich*, 307 Minn. 360, 368, 240 N.W.2d 513, 517 (1976) (following *Albers* to hold defendant waived defense of no license when not raised at trial).

Defendant offers no basis for distinguishing *Albers* or *Nodland*, nor does this court find such a basis. Accordingly, the rule in those cases applies here as well.

### DECISION

The trial court properly found plaintiff entitled to a real estate commission for the lease of defendant's property.

Affirmed.