Daniel **PAIGE**, Appellee, and
Mary Paige,

v.

David **SANDBULTE**, Appellant.

No. 89–5529.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1990.

Decided Oct. 29, 1990.

dressed to legislators or administrators, not to judges." *Chevron*, 467 U.S. at 864, 104 S.Ct. at 2792.

Michael R. Quinlivan, Minneapolis, Minn., for appellant.

Peter N. Thompson, St. Paul, Minn., for appellee.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BRIGHT, Senior Circuit Judge.

David Sandbulte appeals the district court's[1] denial of his Fed.R.Civ.P. 60(b) motion to vacate a judgment entered against him in a personal injury action. Sandbulte contends that the successful plaintiff obtained the judgment and subsequent settlement by fraudulent means. We reject the appeal and affirm the district court.

## I. BACKGROUND

Daniel Paige recovered damages for loss of earnings and future earnings resulting from severe injuries he sustained in a truck accident caused by David Sandbulte's negligence. The district court entered judgment on August 12, 1988, after which the parties entered into a settlement agreement for the sum of $223,000 and agreed to dismiss the action on its merits with prejudice. On August 9, 1989, Sandbulte filed a Fed.R.Civ.P. 60(b) motion to vacate the judgment asserting perjury. The district court rejected the motion and this appeal followed.

Sandbulte's 60(b) motion stems from statements made by Paige's wife, Mary, to Sandbulte's insurance company while she was embroiled in bitter divorce litigation with her husband. Mary Paige, also a plaintiff in the negligence action against Sandbulte, had recovered derivative damages for loss of consortium arising from Sandbulte's negligence. Ten months after the district court entered the judgment,

however, she told Sandbulte's insurance company that Daniel Paige had perjured himself when questioned at trial about the extent of his post-accident work activities. Thereupon, Sandbulte, through his insurer, conducted an *ex parte* investigation in which he secured affidavits stating that Daniel Paige had hired himself out as a carpenter and handyman on several occasions following the accident and prior to trial.

After reviewing the file, the district court summarily rejected Sandbulte's motion to vacate, stating that Sandbulte had "not made a sufficient showing of newly discovered evidence or fraud or other basis to permit relief from a final judgment under Fed.R.Civ.P. 60(b)." On appeal, Sandbulte reasserts the arguments he made to the district court.

## II. DISCUSSION

An appeal from the denial of a 60(b) motion "presents the appellate court only with the question of whether the trial court abused its discretion in ruling on the motion." *Sanders v. Clemco Indus.*, 862 F.2d 161, 169 (8th Cir.1988) (citations omitted). Rule 60(b) "provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances." *United States v. Young*, 806 F.2d 805, 806 (8th Cir.1986) (per curiam), *cert. denied*, 484 U.S. 836, 108 S.Ct. 117, 98 L.Ed.2d 76 (1987). To prevail on his Rule 60(b)(3) motion, Sandbulte needed to establish by clear and convincing evidence that Daniel Paige had engaged in fraud or other misconduct, and that this conduct had prevented Sandbulte from fully and fairly presenting his case. *E.F. Hutton & Co. v. Berns*, 757 F.2d 215, 216–17 (8th Cir.1985) (citations omitted). Sandbulte has established neither.

Sandbulte's principal perjury allegation pertains to Paige's response to direct examination by Paige's attorney regarding his ability to work.

---

1. The Honorable Diana E. Murphy, United States District Judge for the District of Minneso- ta.

Q. Since the accident, have you been able to go back to work?

A. No, sir.

Q. And why is that?

A. I don't have the pushing ability and stuff with my leg that I had before. And climbing—I can't climb like I used to.

I can't lift myself up, like I said, with my leg. And getting in and out of those semis, you have to do a lot of climbing and stuff.

Q. Do you feel you can safely drive a semi-tractor trailer?

A. No. Pushing on the brake is a lot harder than what a car is.

. . . .

Q. Dan, do you feel you'll be able to return to work as a truck driver?

A. No, I don't think so.

Q. And why is that?

A. Not only with not having all the use of my leg and stuff, but I'm not going to be able to sit in a truck for that long. I can't sit and drive like that.

Q. How about any problems with the duties of a truck driver other than the driving?

A. As far as lifting heavy loads and stuff like that, no.

. . . .

The doctors have told me not to carry any more than 20 pounds.

Tr. 39–45.

■ As evidence that this testimony constitutes perjury, Sandbulte offers the subsequent *ex parte* deposition of Paige's estranged wife in which she stated that she "did not believe that [Daniel Paige] was permanently disabled as he talked about at trial." App. 97. Mary Paige substantiated her statement by recounting several part-time light carpentry and handyman projects which Daniel Paige had undertaken between the spring of 1987 and the August 1988 trial. App. 98–105. After reviewing the trial transcript, we conclude that no conflict exists between Mary Paige's *ex parte* assertions and Daniel Paige's testimony regarding his ability to work.

Daniel Paige neither stated nor implied that his disability rendered him incapable of engaging in all types of employment. Instead, the transcript clearly demonstrates that Paige stated merely that he believed his physical condition, which includes a permanently implanted steel rod running from hip to knee, precluded him from returning to his previous employment as a *truck driver*. Both the questions from Paige's counsel and Daniel Paige's answers focus exclusively on how Paige's injuries limited his ability to undertake the basic duties required of a truck driver. Far from claiming that he was completely disabled, Paige himself testified that he was enrolled in a vocational educational program to train for a new career. *See* Tr. 41–42. Thus, Sandbulte's principal charge of perjury lacks any basis in fact, and, therefore, Sandbulte has failed to establish the existence of a fraud on the court.

Sandbulte also asserts two additional conflicts between Daniel Paige's trial testimony and his wife's subsequent *ex parte* statements. First, Daniel Paige testified that he could no longer engage in various recreational activities. *See* Tr. 46. Mary Paige, on the other hand, stated in her post-trial deposition that after the accident and prior to trial Daniel "did go hunting and fishing and he did go golfing." App. 107. Again, the record fails to establish any perjury. Daniel Paige did not claim that he was totally disabled. He stated merely that he could no longer engage in "most" of his previous recreational activities. Tr. 46. In particular, he testified only that he could no longer play tennis, racquetball and basketball. *Id.*

Second, Paige testified that his back injuries necessitated the use of a back brace, and claimed that he wore such a brace "[a]lmost every day." Tr. 65. However, Mary Paige stated in her post-trial deposition that she saw her husband wear his back brace only for "about two weeks after he got it." App. 106. She also stated that Daniel had difficulty locating the brace immediately prior to trial and sought her aid in finding it. *Id.* We acknowledge that her assertions are not compatible with her

husband's trial testimony relating to the back brace. However, this contradiction does not make out a case of fraud in a lawsuit in which liability was not seriously contested, and the verdict rested on relatively undisputed medical evidence which established that Daniel Paige had sustained severe and permanent injury to his leg, lower back, ankle and heel.

Even if we were to accept any of Sandbulte's assertions that the record manifests conflicts which rise to the level of perjury and constitute a fraud on the court, Sandbulte has also failed to establish that such misconduct prevented him from "fully and fairly" presenting his case as required under Rule 60(b)(3). *E.F. Hutton & Co. v. Berns*, 757 F.2d at 217. Sandbulte, despite ample opportunity to cross-examine Paige, never inquired into the crucial issue of other work activity in which Paige might have engaged between the time of the accident and the trial.

Having reviewed the record, we determine that the movant has failed to demonstrate perjury in fact. Thus, we are satisfied that the district court properly rejected the 60(b) motion to vacate. At oral argument, Paige requested that we impose sanctions. On the principal issue of occupational disability, Sandbulte's claim that Paige committed perjury lacks any merit. The appeal at least in part must be characterized as frivolous. In the exercise of our discretion, we award double costs. Fed.R.Civ.P. 38; 28 U.S.C. § 1912.

Accordingly, we affirm the district court, with an award of double costs to Paige.