43 F.3d 367
 30 Fed.R.Serv.3d 1358
 Robert C. ATKINSON, an individual; Robert C. Atkinson,
Inc., a Minnesota Corporation, Plaintiffs-Appellants
v.
PRUDENTIAL PROPERTY COMPANY, INC., an Illinois Corporation;
Defendant-Third Party-Plaintiff-Appellee
GRAYBOW-DANIELS COMPANY, a Minnesota Corporation, Defendant-Appellee,
v.
WESTBURNE SUPPLY, INC., a Delaware Corporation; United
Westburne, Inc., a Canadian Corporation, Third
Party Defendants.
 No. 94-1738.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 17, 1994.
Decided Dec. 20, 1994.
 
 Richard I. Diamond, Minneapolis, MN, argued, for appellant.
 Eric Ingvaldson, Minneapolis, MN, argued (Robert Bennett appeared on the brief), for appellee Prudential.
 Janel LaBoda, Minneapolis, MN, argued (Robert Share appeared on the brief), for appellee Graybow-Daniels.
 Before BEAM, Circuit Judge, CAMPBELL, Senior Circuit Judge,* and MORRIS S. ARNOLD, Circuit Judge.
 LEVIN H. CAMPBELL, Senior Circuit Judge.
 
 
 1
 Plaintiff Robert Atkinson appeals from the district court's order denying his motion to vacate judgment under Fed.R.Civ.P. 60(b). In a prior proceeding, the district court entered summary judgment against Atkinson. Atkinson did not appeal. Nearly one year later, Atkinson moved to vacate that judgment on the basis of newly-discovered evidence and on the basis of alleged misconduct by defendants during discovery. The district court denied the motion. We affirm.
 
 I.
 
 2
 This case involves a dispute over a real estate commission. Plaintiff Atkinson is a licensed real estate broker and president and sole shareholder of plaintiff Robert C. Atkinson, Inc. Defendant Prudential Insurance Company is the owner of an office building located at 2400 Xenium Lane North in Plymouth, Minnesota. Defendant Graybow-Daniels Company, an unincorporated division of Westburne Supply Inc., leased office space in the building at 2400 Xenium Lane in 1991. Prior to 1989, Graybow-Daniels was an independent corporation headed by Marvin Graybow. In the fall of 1989, Westburne acquired both Graybow-Daniels and Graybow Aire, Inc., a corporation headed by Marvin Graybow's son, Steven Graybow.
 
 
 3
 Shortly after the acquisition, Westburne decided to consolidate the facilities of the different companies. Accordingly, Marvin Graybow spoke with Michael Rosen, a commercial real estate broker, about representing Graybow-Daniels in its search for space to lease. In May of 1990, Marvin Graybow signed an agreement granting Rosen the exclusive right to seek and to secure office space for Graybow-Daniels.
 
 
 4
 At approximately the same time and apparently unbeknownst to Marvin Graybow, Steven Graybow contacted Atkinson about securing office space to lease. Steven Graybow subsequently met with Atkinson. Atkinson alleges that at this meeting, Steven Graybow asked Atkinson to represent Graybow-Daniels in its search for office space. Graybow-Daniels denies that this request was made. In early 1990, Atkinson began to investigate and gather information on various possible sites for Graybow-Daniels to lease, including the building at 2400 Xenium Lane. Atkinson toured the space at 2400 Xenium Lane and spoke with representatives of Welsh Companies, Inc., Prudential's agent in charge of listing and maintaining the building.
 
 
 5
 On July 24, 1990, Steven Graybow signed a one-page "Client Representation Agreement", which read:
 
 To Whom it May Concern:
 
 6
 This letter confirms the appointment of Robert C. Atkinson of Robert C. Atkinson, Inc. as exclusive representative for Graybow-Danials [sic] Co. for Opus Corporation, Steven Hoyt Company and any other approved developers project.
 
 
 7
 We authorize Robert C. Atkinson to represent us in discussions with these Development Companies.
 
 
 8
 Robert C. Atkinson is authorized to negotiate on our behalf for these projects but shall make no commitment without our prior written approval. We in no way authorize Robert C. Atkinson to incur any expenses on our behalf in his efforts. Also, we expect Robert C. Atkinson, Inc. to be compensated by the owner/developer.
 
 
 9
 Sincerely,
 
 
 10
 /s/ Steven Graybow
 
 
 11
 Graybow-Danials [sic] Co.
 
 
 12
 Two days later, Steven Graybow signed another agreement which was identical to the first, except that it expressly included the building at 2400 Xenium Lane among the sites to be handled by Atkinson.
 
 
 13
 The next day, on July 27, 1990, Steven Graybow learned that Marvin Graybow had already entered into an exclusive representation agreement with Michael Rosen. Steven Graybow immediately notified Atkinson that Graybow-Daniels had already granted another broker the exclusive right to represent Graybow-Daniels in its search for new office space. Atkinson subsequently met with Rosen to discuss the possibility of splitting commissions. After Rosen refused to split any commissions, Atkinson sent a letter to Graybow-Daniels indicating that he expected a commission should Graybow-Daniels subsequently lease any of the properties, including the building at 2400 Xenium Lane, that Atkinson had investigated on Graybow-Daniels' behalf. Atkinson also sent to Welsh a "Lease Registration Agreement," in which Atkinson asserted his right to a commission, should the space at 2400 Xenium Lane be leased to Graybow-Daniels. Neither Welsh or Prudential signed the agreement.
 
 
 14
 About a year later and after investigating a number of different alternatives, Graybow-Daniels eventually leased the space at 2400 Xenium Lane in September of 1991. Rosen represented Graybow-Daniels during the execution of the lease and received a commission of $338,000.
 
 
 15
 Atkinson subsequently brought suit in February of 1992 against Graybow-Daniels, asserting that he was entitled to a commission, and against Prudential, claiming unjust enrichment and quantum meruit. After discovery, the district court granted defendants' motion for summary judgment in April of 1993. The district court held that under Minn.Stat. Sec. 82.33, subd. 2, all claims by brokers seeking payment arising out of a real estate transaction must be supported by a suitable written agreement. At the time of the decision, that provision stated:
 
 
 16
 No person required by this chapter to be licensed shall bring or maintain any action in the courts for any commission, fee or other compensation with respect to the purchase, sale, lease or other disposition or conveyance of real property, or with respect to the negotiation or attempt to negotiate any sale, lease or other disposition or conveyance of real property unless there is a written agreement with the person bringing or maintaining the action.
 
 
 17
 Minn.Stat. Sec. 82.33, subd. 2 (1986). The district court pointed out that regulations promulgated by the Minnesota Commissioner of Securities and Real Estate set forth requirements that the written agreement required by Minn.Stat. Sec. 82.33 must meet. These included, among other things, a definite expiration date, a description of the real property involved, the amount of any compensation or commission or the basis for computing the commission, and a clear statement explaining the conditions that will entitle the broker to a commission. Minn.R. 2805.1200, subp. 2 (1991); see also, 1993 Minn.Laws ch. 309, Sec. 7 (enacting provisions of Minn.R. 2805.1200, subpts. 1-2 into law, effective Oct. 1, 1993) (codified at Minn.Stat. Sec. 82.195).[1] The written agreement must also indicate that the broker has the authority to act on behalf of the other party, Rueben v. Gibbs, 297 Minn. 321, 210 N.W.2d 857, 858 (1973), and that the other party intends to be bound, R.M. Parranto Co. v. Bernick, 354 N.W.2d 600, 603-04 (Minn.Ct.App.1984). Unless the broker has a written agreement that substantially complies with these requirements, the broker cannot maintain an action based upon a claim[2] for a commission. Id.
 
 
 18
 The district court held that no sufficient written agreement existed in this case, either between Atkinson and Prudential or between Atkinson and Graybow-Daniels. The court held that the two letters signed by Steven Graybow dated July 24, 1990 and July 26, 1990 did not substantially comply with the requirements set forth by the regulations. Although the July 26 letter indicated that Atkinson had authority to act on Graybow-Daniels' behalf and described the real property involved, it did not include an expiration date or any information regarding compensation. The district court also found that the letter did not evince any intent by Prudential to be bound to pay a commission. Indeed, Prudential was not even a party to the agreement. Accordingly, the court concluded that Minn.Stat. Sec. 82.33 barred Atkinson from bringing a claim for a commission against Graybow-Daniels and a claim for unjust enrichment against Prudential. Atkinson did not appeal.
 
 
 19
 Nearly a year later, in March of 1994, Atkinson filed a motion to vacate summary judgment under Fed.R.Civ.P. 60(b). Atkinson alleged that he had recently discovered in his own files a letter that he had received from Welsh, dated August 1, 1990. Atkinson alleged that he discovered this letter by accident, while going through one of his own files containing information unrelated to this case. The letter stated:
 
 Dear Bob:
 
 20
 Enclosed, please find blueprints for the former Target facility at 2400 Xenium Lane, Plymouth, Minnesota.
 
 
 21
 Rental rates are $6.00/$3.25 and taxes are $1.03 per square foot this year, 1990. The warehouse is 24' clear.
 
 
 22
 Bob, the leasing commission is 7%, 6%, 5%, 4%, 3% of each years Base Rent through five years. This is a full commission to the agent procuring a lease for the building. In the event of a lease beyond 5 years we need to discuss the commission for that period.
 
 
 23
 Sincerely,
 
 
 24
 /s/ Jeffrey P. Minea
 
 
 25
 Welsh Companies, Inc.
 
 
 26
 Atkinson argued that this letter was sufficient to satisfy the requirements of Minn.Stat. Sec. 82.33. Citing this newly discovered evidence, Atkinson moved to vacate the earlier judgment.
 
 
 27
 The district court denied Atkinson's motion without holding a hearing. Its order read: "The Court, after carefully reviewing the submissions of the parties and all the files, records and proceedings herein, has determined that the motion should be denied." Atkinson now appeals.
 
 II.
 
 28
 Fed.R.Civ.P. 60(b) provides in relevant part:
 
 
 29
 (b) On motion and upon such terms as are just, the court may relieve a party ... from a final judgment ... for the following reasons:
 
 
 30
 . . . . .
 
 
 31
 (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); ...
 
 
 32
 (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of the opposing party;
 
 
 33
 . . . . .
 
 
 34
 (6) any other reason justifying relief from the operation of the judgment.
 
 
 35
 Rule 60(b) "provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances." United States v. Young, 806 F.2d 805, 806 (8th Cir.1986) (per curiam), cert. denied, 484 U.S. 836, 108 S.Ct. 117, 98 L.Ed.2d 76 (1987). The district court has wide discretion in deciding whether or not to grant a motion under Fed.R.Civ.P. 60(b), and its decision will only be reversed for clear abuse of discretion. Baxter Int'l Inc. v. Morris, 11 F.3d 90, 92 (8th Cir.1993).
 
 
 36
 Atkinson argues on appeal that the district court abused its discretion in denying his motion to vacate judgment under Fed.R.Civ.P. 60(b)(2), (3), and (6). Atkinson also argues that the district court abused its discretion in denying his motion without holding a hearing and without making specific findings of fact. We address each of these arguments in turn.
 
 A. Newly Discovered Evidence--60(b)(2)
 
 37
 To prevail on a motion under 60(b)(2), the movant must show: (1) that the evidence was discovered after trial; (2) that the party exercised due diligence to discover the evidence before the end of trial; (3) that the evidence is material and not merely cumulative or impeaching; and (4) that a new trial considering the evidence would probably produce a different result. Baxter, 11 F.3d at 92 (citing Peterson v. General Motors Corp., 904 F.2d 436, 440 (8th Cir.1990)). We agree with defendants that even if we make the problematic assumption that Atkinson has met the first three requirements,[3] there is no reason to think that consideration of the letter at a new trial would make any difference in the result.
 
 
 38
 As previously discussed, under Minnesota law any claim for payment brought by a broker and arising out of the lease of real property must be supported by a written agreement that meets certain criteria. Minn.Stat. Sec. 82.33; Minn.R. 2805.1200, subp. 2 (1991), supra. Among other things, the written agreement must include a definite expiration date, a description of the real property involved, the amount of any compensation or commission or the basis for computing the commission, and a clear statement explaining the conditions that will entitle the broker to a commission. Minn.Rule 2805.1200, subp. 2. The writing must also indicate that the broker has the authority to act on behalf of the lessee and that the lessee intends to be bound by the agreement. Rueben, 210 N.W.2d at 858; Parranto, 354 N.W.2d at 603.
 
 
 39
 The instant "newly-discovered" letter is signed only by Prudential's agent, Welsh. It is not signed by Graybow-Daniels, nor does it even mention Graybow-Daniels. Plainly, therefore, the letter could not be expected to alter the district court's earlier finding that no written agreement substantially satisfying Minn.Stat. Sec. 82.33 existed between Atkinson and Graybow-Daniels.
 
 
 40
 As respects Prudential, the letter falls well short of meeting all the requirements in the statute and regulations. The letter does include a description of the property and the basis for computing a possible commission. However, it contains no expiration date and no clear statement explaining the conditions under which Atkinson would be entitled to a commission.
 
 
 41
 Most importantly, the letter does not evince a completed agreement between Prudential and Atkinson with respect to a commission. The letter merely quoted the going rents and commissions pertaining to the building. Prudential submitted an unrebutted affidavit from a Welsh officer indicating that the letter was a cover letter forwarding general information about the building to potential lessees. The affidavit states that Welsh sends out hundreds of these letters every month. The plain language of the letter supports this explanation. Nowhere does the letter designate or acknowledge Atkinson to be an agent with whom Prudential had entered into a definite commission arrangement.
 
 
 42
 Atkinson's own actions and testimony indicate that the letter was not regarded by him as a binding contract. Atkinson sent to Prudential a proposed lease agreement after receiving this letter. It appears, therefore, that Atkinson himself did not believe that the letter was a binding contract. Moreover, Atkinson earlier testified in a deposition that he was aware of no writing embodying the alleged agreement between himself and the defendants. Both Atkinson's actions and earlier testimony, as well as the language contained in the letter, are inconsistent with his present contention that the newly-discovered letter was a written agreement between Prudential and him such as to satisfy Minn.Stat. Sec. 82.23.
 
 
 43
 As the letter would not have satisfied the requirements of Minn.Stat. Sec. 82.33,[4] reopening the case to consider it would not likely have changed the result of the earlier proceeding. The district court, therefore, did not abuse its discretion in refusing to grant relief from judgment under Fed.R.Civ.P. 60(b)(2). See Smith v. United States, 618 F.2d 507, 511 (8th Cir.1980).
 
 B. Fraud and Misconduct--60(b)(3)
 
 44
 To prevail on a motion under Rule 60(b)(3), the movant must show, with clear and convincing evidence, that the opposing party engaged in a fraud or misrepresentation that prevented the movant from fully and fairly presenting its case. Paige v. Sandbulte, 917 F.2d 1108, 1109 (8th Cir.1990). Atkinson argues that defendants engaged in misconduct by failing to produce or disclose the existence of the letter. Atkinson argues that his discovery requests should have compelled the disclosure of the letter, and that the failure to produce the letter constituted misconduct.
 
 
 45
 We agree with defendants that Atkinson has submitted no evidence of misconduct or fraud. While failure to produce evidence requested in discovery may under some circumstances be grounds for vacating judgment, e.g., Stridiron v. Stridiron, 698 F.2d 204, 207 (3d Cir.1983), Atkinson has submitted no evidence that the failure to do so in this case was due to misconduct on the part of defendants. Attorneys for both Graybow-Daniels and Prudential submitted unrebutted affidavits indicating that they did not possess a copy of the letter or know of its existence. An affidavit from a Welsh officer indicated that this type of letter would not normally be kept in Welsh's permanent files, since it was essentially a form letter sent out to hundreds of potential lessees each month. Atkinson has presented no evidence to rebut defendants' evidence that there was nothing improper in their failure to produce the letter.[5]
 
 
 46
 Moreover, failure to disclose the letter did not prevent Atkinson from fully and fairly litigating his claim. This is not a case in which defendants withheld information that they alone possessed. A copy of the letter was in Atkinson's possession the entire time, having been addressed to him and a copy of it having been lodged in his own files. He had had a fair opportunity to discover it simply by going through his own files. As already pointed out, moreover, production of the letter would have made absolutely no difference in the result. Hence, we cannot say that Atkinson was denied the opportunity to fully and fairly litigate his claim. See Paige, 917 F.2d at 1109.
 
 
 47
 In the absence of any evidence of misconduct or fraud or any evidence that Atkinson was prevented from fully and fairly litigating his claim, we cannot say that the district court abused its discretion by denying the motion to vacate under Fed.R.Civ.P. 60(b)(3). See Hicks v. Six Flags Over Mid-America, 821 F.2d 1311, 1317 (8th Cir.1987).
 
 C. Any Other Reason--60(b)(6)
 
 48
 Atkinson argues that the catch-all provision in Rule 60(b)(6) requires vacating the judgment in "the interests of justice." Atkinson alleges that the district court's grant of summary judgment, in which the court concluded that there was no writing that complied with the requirements of Minnesota law, is now being used in a proceeding before the Minnesota Department of Commerce to suspend his real estate license. Given the importance of such a license to his business, Atkinson argues, the court should allow the letter to be admitted. Doing so, he argues, would remove some of the stigma associated with the district court's determination that he had failed to comply with Minn.Stat. Sec. 82.33.
 
 
 49
 This is not the type of "exceptional circumstance" that Rule 60(b)(6) was intended to cover. Relief is available under Rule 60(b)(6) only where "exceptional circumstances prevented the moving party from seeking redress through the usual channels." In re Zimmerman, 869 F.2d 1126, 1128 (8th Cir.1989). Atkinson cites no cases supporting his argument that he is entitled to relief because a judgment led to a proceeding to revoke his license. "Exceptional circumstances" are not present every time a party is subject to potentially unfavorable consequences as a result of an adverse judgment properly arrived at. Rather, exceptional circumstances are relevant only where they bar adequate redress. As noted above, Atkinson had a full and fair opportunity to litigate his claim. The district court properly found that he had failed to comply with Minn.Stat. Sec. 82.33, and the "newly-discovered" letter does not disturb that finding. Accordingly, Atkinson is not entitled to relief under Fed.R.Civ.P. 60(b)(6).[6]
 
 D. Hearing and Specific Findings
 
 50
 Finally, Atkinson argues that the district court abused its discretion in denying his motion without holding a hearing and without making specific findings. Atkinson expresses his concern that his motion was not adequately considered, given the full docket before the district courts. Although Atkinson acknowledges that oral argument is discretionary and that there is no requirement under Rule 60(b) for the district court to make specific findings, Atkinson argues that the requirements of Rule 52(a) should be applied by analogy to this case. Accordingly, Atkinson asks the court to remand this issue to the district court with orders to hold a hearing and make specific findings.
 
 
 51
 Neither the Federal Rules of Civil Procedure nor the local rules require the district court to hold a hearing or make specific findings in dealing with a Rule 60(b) motion. Rather, whether to grant a hearing or make specific findings in ruling upon a Rule 60(b) motion is left to the district court's discretion. See Wilson v. Johns-Manville Sales Corp., 873 F.2d 869, 873 (5th Cir.), cert. denied, 493 U.S. 977, 110 S.Ct. 504, 107 L.Ed.2d 506 (1989). Given the issues the motion raised, the court's first-hand familiarity with the main case, and the fact that the alleged newly-discovered evidence, a letter, was perfectly clear on its face, we cannot say that a hearing or express findings were essential. We conclude that the district court did not abuse its discretion in not holding a hearing or making specific findings.
 
 
 
 *
 The HONORABLE LEVIN H. CAMPBELL, Senior United States Circuit Judge for the First Circuit, sitting by designation
 
 
 [1]
 The regulations set forth requirements for writings between lessors and brokers (e.g. between Prudential and Atkinson, in this case), since commissions are usually paid by the lessor. This case is somewhat unusual in that the broker is bringing a claim for a commission against the lessee, Graybow-Daniels. The district court held, however, that the requirements in the regulations, though targeted at writings between lessors and brokers, apply with equal force to writings between brokers and lessees (e.g. between Atkinson and Graybow-Daniels, in this case). Thus, the district court held, both of Atkinson's claims against Prudential and Graybow-Daniels were subject to the writing requirements set forth in the regulations. Atkinson does not dispute this holding, and we accept it for the purposes of this appeal
 
 
 [2]
 The statute also bars claims, like the one brought against Prudential, for compensation under a theory of unjust enrichment. See Krogness v. Best Buy, Inc., 524 N.W.2d 282, 285-86 (Minn.Ct.App.1994)
 
 
 [3]
 Although we base the decision on other grounds, we note that it is highly unlikely that Atkinson has shown that the evidence is "newly discovered" within the meaning of Fed.R.Civ.P. 60(b)(2). Atkinson was in possession of the letter the entire time. Where a party had possession of the evidence the entire time, the party's later "discovery" of the evidence is generally not sufficient to support a motion under Rule 60(b)(2). See, e.g., Kansas City Area Transp. Auth. v. Missouri, 640 F.2d 173, 175 (8th Cir.1981); Taylor v. Texgas Corp., 831 F.2d 255, 259 (11th Cir.1987) (holding that "evidence cannot be 'newly discovered' under Rule 60 if it is in the possession of the moving party or that party's attorney prior to the entry of judgment"). Atkinson had the letter, bore the burden of proof, failed to produce the letter at trial, and should not be excused for his own careless filing system. Moreover, Atkinson has not shown that he could not have discovered the letter through the exercise of due diligence
 
 
 [4]
 We recognize that some courts have refused to apply the statute where it is raised simply to avoid payment under an otherwise admitted agreement which has been substantially performed, see, e.g., R.M. Parranto Co., 354 N.W.2d at 603. Such is not the case here. As the district court found, defendants vigorously deny that any agreement to pay a commission ever existed. The "newly-discovered" letter does not disturb the district court's finding on this point
 
 
 [5]
 Indeed, Prudential may well have produced the letter. Both Prudential and Welsh made their files available to Atkinson during discovery. Atkinson did not go through them. Had he done so and had the letter been in those files at that time, Atkinson might have discovered it
 
 
 [6]
 We note also that Atkinson's allegation that there is such a pending proceeding is unsupported. Atkinson has submitted no evidence of any pending attempt to suspend his license