# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1598

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Metropolitan St. Louis Sewer District, | * | Eastern District of Missouri. |
| | * | |
| Defendant - Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Mallinckrodt, Inc., | * | |
| | * | |
| Intervenor - Appellant. | * | |

_____

Submitted: November 16, 2005
Filed: March 6, 2006

_____

Before SMITH, HEANEY, and BENTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Mallinckrodt, Inc. intervened in a Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") contribution action between the Metropolitan St. Louis Sewer District ("MSD") and the Environmental Protection Agency ("EPA"). Mallinckrodt opposed the entry of a Consent Decree between the

parties. Over Mallinckrodt's objections, the district court[1] entered the Consent Decree. Thereafter, Mallinckrodt filed motions for reconsideration based on newly discovered evidence pursuant to Federal Rules of Civil Procedure 59(e) and 60(b)(3). The district court denied these motions. For the reasons stated below, we affirm.

## I. *Background*

CERCLA grants the Executive Branch substantial authority and broad discretion to provide for the cleanup of hazardous-substance sites. The government, however, does not bear the complete cost of site cleanup. CERCLA provides that monies spent by federal and state governments to clean up hazardous substances will, whenever possible, be recovered from responsible parties, including owners and operators of facilities where hazardous substances are disposed.

The United States spent $9,237,244.30 cleaning up the contamination of hazardous substances at the Great Lakes Container Corporation Superfund Site ("the Site") in St. Louis, Missouri. From 1952 to 1986, a facility that reconditioned used steel drums operated on the Site. During this period, the Site became contaminated with various hazardous substances. The larger portion of this Site consists of a 10-acre, roughly rectangular, parcel on which the drum reclamation facility was located. Mallinckrodt operated a drum recycling plant there between 1970 and 1976. Prior to that time, Mallinckrodt's corporate predecessor ran the plant. The remainder of the Site, just west of the former facility, is a one-acre parcel that was owned by the St. Louis Metropolitan Bridge Terminal Railway Company until MSD bought the property for expansion of its secondary treatment facilities. However, MSD never built additional facilities, and its property remained vacant.

---

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

In early 2001, the EPA invited MSD and Mallinckrodt to negotiate a settlement on the clean up costs. The EPA initially assigned a share of approximately 4% of the total cost to MSD for clean up of the Site. The EPA concluded that MSD was most likely a "passive landowner" that neither participated in nor profited from the contamination of its property by hazardous substances, even though approximately 26% of the contaminated soil that was removed from the Site, by volume, came from the one-acre tract owned by MSD. After extensive negotiations, MSD and the EPA negotiated a Consent Decree, which required MSD to reimburse the United States $230,000 in response costs. This reduced MSD's share of the clean up costs to about 2.52% of the total.

EPA and MSD filed this Consent Decree with the district court, and a thirty-day public comment period ensued. During this period, the United States received comments from Mallinckrodt, a defendant in a companion CERCLA case involving the same Site, arguing that the amount to be paid by MSD was too small and that Mallinckrodt and other potentially responsible parties ("PRPs") would be unfairly saddled with the remainder of the costs. Since CERCLA provides for joint and several liability for all PRPs, any reduction in MSD's liability could increase Mallinckrodt's. Mallinckrodt formally intervened in the district court case between MSD and the EPA and filed its opposition to the United States' motion to enter the Consent Decree. After considering the parties' briefing and argument, the district court entered the Consent Decree.

After entry of the Consent Decree, Mallinckrodt timely filed a Fed. R. Civ. P. 59(e) motion to alter or amend the judgment, alleging the discovery of new evidence. Mallinckrodt claimed that an expert report prepared in its companion CERCLA case, which interpreted aerial photographs of the Site, established that MSD actively

participated in the transportation and disposal of wastes on its part of the Site.[2] Mallinckrodt also submitted three documents it obtained from the EPA in support of this claim. The district court denied Mallinckrodt's motion, stating that the evidence was not "new."

After the district court denied its Rule 59(e) motion, Mallinckrodt filed a motion pursuant to Rule 60(b)(3), asking the district court to reconsider. Mallinckrodt claimed that counsel for MSD and the EPA made fraudulent statements at the hearing on the Consent Decree. The district court denied Mallinckrodt's Rule 60(b)(3) motion. Mallinckrodt filed a timely notice of appeal of the district court's entry of the Consent Decree and its rulings on the post-judgment motions.

## II. *Discussion*

On appeal, Mallinckrodt contends that the district court granted the Consent Decree settlement because MSD falsely represented itself as a passive owner, and this misrepresentation prevented Mallinckrodt from fairly presenting its objections. In addition, Mallinckrodt suggests that newly discovered evidence establishes that MSD actually materially contributed to the contamination, and this new evidence is both material and outcome determinative. Specifically, Mallinckrodt argues that the expert report submitted after the Consent Decree was entered, prepared by Wayne Grip, an expert in interpreting aerial photographs, established that MSD was a substantial contributor to the contamination of the Site. Therefore, Mallinckrodt contends that the district court abused its discretion in denying its post-judgment motions for relief. We disagree and affirm.

---

[2]Mallinckrodt's expert report, prepared by Wayne Grip, suggests that: (1) MSD was responsible for the majority of the buried drums on the Site; (2) MSD was also responsible for uncovering and then re-burying some of those drums; and (3) MSD was directly responsible for depositing toxic sludge ash on the property and on a piece of property directly to the south.

## A. *Rule 59(e) Motion*[3]

A district court has broad discretion in determining whether to grant or deny a motion to alter or amend judgment pursuant to Rule 59(e), and this court will not reverse absent a clear abuse of discretion. *Innovative Home Health Care v. P.T.-O.T. Assoc. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998). It should be noted that Rule 59(e) motions serve the limited function of correcting "'manifest errors of law or fact or to present newly discovered evidence.'" *Id.* (quoting *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988)). "Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." *Id.* To prevail on a Rule 59(e) motion, the movant must show that (1) the evidence was discovered after trial; (2) the movant exercised due diligence to discover the evidence before the end of trial; (3) the evidence is material and not merely cumulative or impeaching; and (4) a new trial considering the evidence would probably produce a different result. *See U.S. Xpress Enter. Inc. v. J.B. Hunt Transp., Inc.*, 320 F.3d 809, 815 (8th Cir. 2003) (discussing factors one must show to prevail under Rule 60(b)(2), which are the same under Rule 59(e)).

Mallinckrodt argues that the district court should have granted its motion for a new trial pursuant to Rule 59(e) based on newly discovered evidence, namely, the newly acquired Grip analysis of MSD's activities on the Site. First, Mallinckrodt states that it did not discover the evidence that MSD materially contributed to the contamination of the Site until 11 days after the judgment, when Grip completed his

---

[3]Rule 59(e) and Rule 60(b)(2) are analyzed identically. Rule 59(e) states in relevant part, "[a]ny motion to alter or amend a judgment shall be filed no later that 10 days after entry of judgment." Rule 60(b)(2) states in relevant part, "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)."

expert report. Second, Mallinckrodt avers that it exercised due diligence to discover the evidence. Mallinckrodt asserts that the focus of the hearing on the Consent Decree was whether MSD knowingly allowed others to contaminate its property—not whether MSD itself had materially contributed to the contamination. The district court found that the documents and photographs underlying the Grip report were in Mallinckrodt's possession or readily available prior to the Consent Decree. Mallinckrodt responds by stating that this finding ignores the context in which Mallinckrodt acted. Mallinckrodt argues that it had no reason to doubt the EPA and MSD's representations that MSD had not contributed to the contamination. Consequently, Mallinckrodt claims that it had no reason to look for this evidence.

Third, Mallinckrodt suggests that this evidence is material, not cumulative, because it is the only evidence on the topic of MSD's contribution to the Site contamination. For that same reason, Mallinckrodt states that a new trial considering this new evidence would produce a different result. Under CERCLA, the settlement is to reflect the relationship of the settlement figure to the proportion of the settling party's waste. Based on its purported new evidence, Mallinckrodt claims MSD's 2.5% settlement is unfair and contrary to the aims of CERCLA. It further avers that it has offered far more than speculation, and for that reason, the district court abused its discretion in denying its Rule 59(e) motion.

The appellees respond by stating that Mallinckrodt has failed to show any of the four elements necessary to prevail under Rule 59(e). First, the Grip report was created, not discovered, after the district court entered judgment. Second, Mallinckrodt failed to complete the Grip report in time to present it during the Consent Decree hearing and thus did not exercise due diligence. Third, the Grip report is highly conclusory, and at best, cumulative. Lastly, the district court's consideration and rejection of the Grip report shows that even if the report had been timely presented, it would not have prevented approval of the Consent Decree.

We agree with the appellees. After reviewing the opinion of the district court, we find no abuse of discretion in denying Mallinckrodt's Rule 59(e) motion. In support of its ruling, the district court stated the following:

> This Court finds that Mallinckrodt has presented no new evidence. The documents relied on by Mallinckrodt and several of the aerial photographs relied on by Mr. Grip in his report were in Mallinckrodt's possession or readily available for months prior to this Court entering the Consent Decree. Arguing a new application of these facts under a new strategic theory cannot be considered "new evidence." . . . Mr. Grip's analysis does not raise new facts; instead, it raises only new opinions and suspicions about the extent to which MSD contributed to the contamination at the GLCC Site. Because Mallickrodt fails to provide "new evidence" as required under FRCP 60(b)(2), this Court finds that Mallinckrodt's motion should be denied.

This court has consistently held that Rule 59(e) motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to the entry of judgment. *See Innovative Home Health Care*, 141 F.3d at 1286 (8th Cir. 1998); *Garner v. Arvin Indus. Inc./Arvin North Am. Automotive*, 77 F.3d 255, 258–59 (8th Cir. 1996). In this case, Mallinckrodt has not advanced a persuasive explanation for its failure to obtain or produce this "new" evidence before the Consent Decree hearing. All information used in formulating the Grip report was available to Mallinckrodt well before the Consent Decree hearing. In fact, the aerial photographs analyzed by Mr. Grip were obtained through a commercial vendor, and the documents from the EPA, used by Mallinckrodt, were given to Mallinckrodt 17 months before the Consent Decree hearing.

Because this evidence was available to Mallinckrodt, it should have been presented prior to the entry of judgment. The Grip report is merely a newly created opinion based on facts known to or accessible by Mallinckrodt at the time of the Consent Decree hearing and cannot warrant relief under Rule 59(e). Mallinckrodt

controlled the timing of the production and proffer of its own expert's opinion. Thus, the district court did not abuse its discretion in refusing to consider Mallinckrodt's new evidence. *See Crowell v. Campbell Soup Co.*, 264 F.3d 756, 764 (8th Cir. 2001) (holding that the allegedly new evidence appeared to come from public records and not from any misrepresentation of the appellee, therefore, the district court did not abuse it discretion in denying the appellant's motion for reconsideration under Rule 59(e)); *Liberty Mutual Ins. Co. v. FAG Bearings Corp.*, 153 F.3d 919, 924 (8th Cir. 1998) (holding that the appellant failed to show that it exercised due diligence to discover the new evidence and failed to show why such evidence could not have been discovered earlier).

B. *Rule 60(b)(3) Motion*[4]

To prevail on a Rule 60(b)(3) motion, the movant must show, "'with clear and convincing evidence, that the opposing party engaged in a fraud or misrepresentation that prevented the movant from fully and fairly presenting its case.'" *Harley v. Zoesch*, 413 F.3d 866, 870 (8th Cir. 2005) (quoting *Atkinson v. Prudential Property Co., Inc.*, 43 F.3d 367, 372–73 (8th Cir. 1994)). "It is within the trial court's discretion to determine whether the Rule 60(b)(3) test has been met, and on review the only inquiry is whether there has been an abuse of discretion." *E.F. Hutton & Co., Inc. v. Berns*, 757 F.2d 215, 217 (8th Cir. 1985).

Mallinckrodt states that shortly after the entry of the Consent Decree, it unearthed evidence not previously available that clearly established that MSD played a principal role in burying the drums on the Site and adding to the contamination. In

---

[4]Rule 60(b)(3) states in relevant part, "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party . . ."

support of its Rule 60(b)(3) motion, first, Mallinckrodt argues that counsel for both MSD and the EPA misrepresented MSD's status as a purely passive owner. Based upon the Grip report, Mallinckrodt asserts that it is clear that the statements made by MSD and the EPA were erroneous. Although Mallinckrodt does not allege that the appellees made any intentional misrepresentations, Mallinckrodt urges that Rule 60(b)(3) applies to unintentional misrepresentations, as well as intentional. Thus, Mallinckrodt contends that the district court erred in finding that it failed to show that the EPA and MSD intentionally misled the Court.

Second, Mallinckrodt argues that the EPA's and MSD's misrepresentations prevented it from fully and fairly presenting its objections to the Consent Decree. Because no discovery was permitted, Mallinckrodt claims that it was even more critical that counsel for the EPA and MSD make absolutely certain that MSD had not materially contributed to the contamination before repeatedly representing such to the district court. Forced to rely on the EPA's and MSD's assertions, Mallinckrodt contends that it was prevented from fully and fairly presenting its objections to the Consent Decree, and, as a result, the district court erred in denying it relief pursuant to Rule 60(b)(3).

We find no abuse of discretion in the district court's denial of Mallinckrodt's Rule 60(b)(3) motion. Under Rule 60(b)(3), Mallinckrodt was required to show that the appellees engaged in fraud or misrepresentation, *and* that it was prevented from fully and fairly litigating this case. Mallinckrodt has shown neither. The district court stated the following in its Rule 60(b)(3) opinion:

> Mr. Grip's analysis of the aerial photographs presented in support of this motion by Mallinckrodt does not raise new facts; instead it raises only new opinions and suspicions about the extent to which MSD contributed to the contamination at the Great Lakes Corporation Site. Because Mallinckrodt is unable to even prove the falsity of the statements made by the Environmental Protection Agency and the Metropolitan St. Louis

Sewer District with clear and convincing evidence, much less provide evidence that the EPA and MSD were intentionally misleading the Court, Mallinckrodt has not convinced this Court that it was prevented from fully and fairly presenting its case. This Court holds that Mallickrodt has not met its burden under FRCP 60(b)(3), and its motion should be denied.

We agree. "This is not a case in which the [appellees] withheld information that they alone possessed. A copy of the [evidence] was in [Mallinckrodt's] possession the entire time. . . . [it] had a fair opportunity to discover [the evidence] simply by going through [its] files." *Atkinson*, 43 F.3d at 373. Mallinckrodt presented no evidence to support its assertion that the appellees withheld evidence, giving rise to a claim of fraud or misrepresentation. *See Harley*, 413 F.3d at 871 (holding that the participant in this case did not present the kind of clear and convincing evidence of misrepresentation necessary to prevail on a Rule 60(b)(3) motion).

Moreover, Mallinckrodt's claim that it relied on the appellees' assertion that MSD was a "passive landowner" is completely unconvincing. Mallinckrodt intervened in this case and presented evidence that MSD's allocation of the clean up costs was disproportionate. Mallinckrodt's expert report would have been relevant in advancing its position during the Consent Decree hearing and could have been prepared and presented at that time. As such, the district court did not err in refusing to give Mallinckrodt a second bite at the apple. Mallinckrodt was given a full and fair opportunity to litigate this case in the first instance and cannot blame deficiencies in presenting its case on the appellees. Therefore, the district court did not abuse its discretion in denying Mallinckrodt's Rule 60(b)(3) motion.

### III. *Conclusion*

For the reasons stated above, the district court's rulings on Mallinckrodt's post-judgment motions are affirmed.

_____